

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 16 2015

madsen, C.J.

CHIEF JUSTICE

This opinion was filed for record
at 8:00 AM on July 16, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GRANT COUNTY PROSECUTING ATTORNEY, | ) ) ) | |
| Respondent, | ) ) | No. 90827-3 |
| v. | ) ) | En Banc |
| JERRY JASMAN and CRAIG MORRISON, | ) ) ) ) | Filed    JUL 16 2015 |
| Petitioners. | ) ) ) | |

OWENS, J. — After an incident involving his then-deputy coroner, Grant County Coroner Jerry Lee Jasman pleaded guilty to disorderly conduct and resigned from office. By statute, Jasman's conviction prohibited him from holding public office again. RCW 9.92.120. However, the new Grant County coroner, Craig Morrison, quickly hired Jasman as chief deputy coroner and chief investigator. In this case, we must decide whether Jasman can hold those positions given that he is prohibited from holding public office. Jasman may not hold those positions if they are "public officer" positions. Deputies are public officers because deputies are

legally authorized to discharge the duties of public officers (in this case, county coroner). Similarly, as chief investigator, Jasman was a public officer to the extent that he *functioned* as a deputy coroner and discharged the duties of county coroner. Therefore, we hold that both positions are "public officer" positions and that Jasman may not hold either position.

As a separate issue, we must decide whether Coroner Morrison was entitled to a special prosecutor's representation when he intervened as a defendant in this lawsuit. By statute and our case law, prosecutors are required to represent county officers only when an officer is sued for money damages or when the county or State is the real party in interest. RCW 4.96.041(1), (2); *Osborn v. Grant County*, 130 Wn.2d 615, 625, 926 P.2d 911 (1996). In this case, Coroner Morrison was not sued for money damages and the State or county was not the real party in interest, so he was not entitled to a special prosecutor's representation.

## FACTS

Jasman was the Grant County coroner, and he resigned from that position after he pleaded guilty to disorderly conduct for an incident involving his then-deputy coroner.

After Jasman resigned, Grant County voters elected Morrison as coroner, and one of Coroner Morrison's first actions was to hire Jasman as his "deputy and chief investigator" based on Jasman's experience and training. Clerk's Papers (CP) at 155.

Jasman took an oath of office for "the office of Chief Deputy Coroner." *Id.* at 161. Part of Jasman's duties as deputy coroner involved him signing death certificates. Prosecutor D. Angus Lee expressed concern over Coroner Morrison employing Jasman as deputy coroner when Jasman was ineligible to hold public office because of his conviction. Because of Prosecutor Lee's concern, Coroner Morrison said he changed Jasman's title to "Chief Investigator, an at-will employee, rather than deputizing him as an appointed official." *Id.* at 92. However, Jasman did not formally resign his deputy position until after Prosecutor Lee filed this quo warranto[1] action. One of Jasman's duties as "Chief Investigator" was "to determine and certify the cause and manner of death in cases [the coroner's] office takes jurisdiction over." *Id.* Jasman signed four death certificates in his capacity as chief investigator. Prosecutor Lee contended that the death certificates that Jasman signed were legally invalid and that Jasman was not authorized by law to sign death certificates.

Subsequently, Prosecutor Lee filed a quo warranto action against Jasman, claiming Jasman "unlawfully exercised the public office of coroner or deputy coroner." *Id.* at 4. Once Prosecutor Lee filed this lawsuit, Jasman resigned his deputy position but retained his chief investigator position.

---

[1] Quo warranto is Latin for "'by what authority.'" BLACK'S LAW DICTIONARY 1447 (10th ed. 2014). It is a common law writ that allows someone to challenge a person's authority to hold public office. *Id.*

After Prosecutor Lee filed the quo warranto action, Coroner Morrison asked the Grant County Board of Commissioners (Board) to indemnify Jasman for the attorney fees and costs of defending the action. The Board initially agreed, but it reversed its decision and refused to indemnify Jasman after receiving legal advice from Prosecutor Lee. Because of Prosecutor Lee's actions, Jasman moved to disqualify him from representing himself as plaintiff in the quo warranto action, arguing Prosecutor Lee had a conflict of interest. Jasman contended that Prosecutor Lee owed a duty of independent judgment in prosecuting the quo warranto case and that by advising the Board not to indemnify Jasman (who was the defendant in the same case), it created a conflict of interest. The trial court granted Jasman's motion, albeit for a different reason. The trial court stated it believed Coroner Morrison was the real party in interest (though not a necessary party) and that Prosecutor Lee had a duty to advise both Coroner Morrison and the Board. The trial court reasoned that it "appears to the Court to be a conflict for the Prosecutor, who has an obligation to advise the County Coroner, to choose instead to advise the [Board]." *Id.* at 350.

Coroner Morrison and Jasman moved the trial court to allow Coroner Morrison to intervene, and they also moved the trial court to appoint a special prosecutor to represent them. They argued that Prosecutor Lee had a statutory duty to represent Coroner Morrison because of his position as elected coroner. The trial court granted

4

their motion to allow Coroner Morrison to intervene but denied their motion to appoint a special prosecutor.

Regarding the substance of the quo warranto action, the trial court granted Prosecutor Lee's summary judgment motion, prohibiting Jasman from exercising the office of Grant County coroner or deputy coroner and enjoining him from signing death certificates in any capacity.

The Court of Appeals affirmed. *Lee v. Jasman*, 183 Wn. App. 27, 71-72, 332 P.3d 1106 (2014). Regarding the removal and signing death certificates issue, it held that Jasman, acting as deputy, was a "public officer" under the civil forfeiture statute (which requires public officers to forfeit office upon conviction for malfeasance in office). *Id.* at 63; RCW 9.92.120. It thus concluded Jasman could not be deputy coroner or perform the functions of deputy coroner (like signing death certificates). *Id.* Regarding the special prosecutor issue, the Court of Appeals held that Jasman and Morrison were not entitled to have a special prosecutor represent them. *Id.* at 66-67. The court concluded that Prosecutor Lee did not have a duty to represent Coroner Morrison under the statute prescribing prosecutors' duties.[2] *Id.* at 65-66.

We granted Jasman and Morrison's petition for review. *Lee v. Jasman*, 182 Wn.2d 1002, 342 P.3d 327 (2015).

---

[2] The Court of Appeals also ruled on a judicial estoppel issue and declined to award Prosecutor Lee attorney fees and costs. *Lee*, 183 Wn. App. at 67-72. We denied review of those issues.

ISSUES

1. Did the trial court properly remove Jasman from his position as deputy coroner and enjoin him from signing death certificates?

2. Was Coroner Morrison entitled to have a special prosecutor represent him (and is he thus entitled to attorney fees and costs)?

ANALYSIS

*1. The Trial Court Properly Removed Jasman and Enjoined Him from Signing Death Certificates Because His Positions Were "Public Officer" Positions, and He Was Thus Subject to the Civil Forfeiture Statute*

The parties do not dispute that an elected coroner is a public officer. Rather, they dispute whether Jasman, acting as a deputy coroner or a "chief investigator" who signed death certificates, was a "public officer" subject to the forfeiture statute. We hold that as deputy coroner, Jasman was a "public officer" because he was authorized by law to discharge the duties of a public officer—county coroner. Regarding Jasman's "chief investigator" position, we hold that Jasman was a "public officer" only to the extent that he functioned as a deputy coroner.

*a. The Forfeiture Statute and the Meaning of "Public Officer"*

Under the Washington Constitution, "[t]he governor and other state and judicial officers" are subject to impeachment, and "[a]ll officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law." WASH. CONST. art. V, §§ 2, 3. In 1909, the legislature

enacted a statute providing for the removal of public officers who are not subject to impeachment. That law states, "The conviction of a public officer of any felony or malfeasance in office shall entail, in addition to such other penalty as may be imposed, the forfeiture of his office, and shall disqualify him from ever afterwards holding any public office in this state." LAWS OF 1909, ch. 249, § 37 (currently codified as RCW 9.92.120). The legislature recently amended that statute to include gender neutral language; otherwise, it remains the same. LAWS OF 2011, ch. 336, § 333.

There is no statutory definition of the term "public officer" in Title 9 RCW. Although the legislature originally defined "public officer" to include the deputies, clerks, and employees of a public officer, the legislature repealed that broad definition in 1975. LAWS OF 1909, ch. 249, § 51(24) (former RCW 9.01.010(24)); LAWS OF 1975, 1st Ex. Sess., ch. 260. And, although "public officer" is defined in the new Criminal Code, Title 9A RCW, that definition is limited to the criminal context. RCW 9A.04.110(13); *see also* RCW 9A.04.090 (providing that the definitions in chapter 9A.04 RCW "are applicable to *offenses* defined by this title or another statute, unless this title or such other statute specifically provides otherwise" (emphasis added)). Statutory forfeiture of public office is not a crime. *State ex rel. Zempel v. Twitchell*, 59 Wn.2d 419, 430, 367 P.2d 985 (1962). Because forfeiture is not a crime and because the legislature repealed the definition of "public officer" in Title 9 RCW,

we must look to the "common law or ordinary meaning" of the term. *State v. Chester,* 133 Wn.2d 15, 22, 940 P.2d 1374 (1997) ("In the absence of a specific statutory definition, words in a statute are given their common law or ordinary meaning."). That being said, any interpretation of the ordinary meaning of "public officer" should comply with a long-standing rule of construction from our legislature regarding how to interpret the term "officer" in the civil context: "Whenever any term indicating an officer, is used, it shall be construed, when required, to mean any person authorized by law to discharge the duties of such officer." LAWS OF 1854, ch. 54, § 501, at 221 (currently codified as RCW 1.16.065).

We also have no common law definition of "public officer" in the context of the forfeiture statute, RCW 9.92.120. Our only cases interpreting "public officer" are limited to article XI, section 5 of the Washington Constitution—not statutory forfeiture. The petitioners' central argument is based on two cases interpreting article XI, section 5: *Nelson v. Troy,* 11 Wash. 435, 39 P. 974 (1895), and *State ex rel. McIntosh v. Hutchinson,* 187 Wash. 61, 59 P.2d 1117 (1936). The petitioners rely on those cases for the proposition that "[a]n employee or a deputy is not an officer." *McIntosh,* 187 Wash. at 63; *Nelson,* 11 Wash. at 442. We decline to adopt the interpretation of "public officer" from those constitutional cases. In those cases, we limited our reasoning to the constitutional context. *See Nelson,* 11 Wash. at 441-42 (construing "officer" solely by examining the "scope of the constitutional provision").

Further, adopting the petitioners' suggested definition would conflict with the long-standing rule of construction from our legislature regarding how to interpret the term "officer." RCW 1.16.065 provides, "Whenever any term indicating an officer is used it shall be construed, when required, to mean any person authorized by law to discharge the duties of such officer." That statute implicates deputies because deputies are authorized by statute to "perform any act which his or her principal is authorized to perform." RCW 36.16.070. Thus, concluding that deputies are not officers would directly conflict with RCW 1.16.065. Finally, adopting the petitioners' suggested definition would directly conflict with our recent precedent in which we found that a deputy prosecutor was a public officer in a statutory context. *Eubanks v. Brown*, 180 Wn.2d 590, 602, 327 P.3d 635 (2014) ("This is a case where a public officer is trying to use his office to justify acts outside his designated authority.").

Because no statute or case directly defines the term "public officer" in the civil forfeiture context, we must look to the ordinary meaning of the term. *Chester*, 133 Wn.2d at 22. In interpreting the ordinary meaning of a word, "[a] nontechnical word may be given its dictionary definition." *Id.* We adopt the dictionary definition of "public officer" and combine that definition with the long-standing rule of construction from our legislature regarding how to interpret the term "officer" in the civil context. This definition best captures what the ordinary meaning of "public

officer" would have been in 1909 when the legislature enacted the civil forfeiture statute.

In 1909, the term "office" meant "[a] special duty, trust, charge, or position, conferred by authority and for a public purpose ; a position of trust or authority ; as, an executive or judicial office ; a municipal office." WEBSTER'S INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 998 (1899) (emphasis omitted). An "officer" was "[o]ne who holds an office ; a person lawfully invested with an office." *Id.* Additionally, in 1854, our legislature gave a rule of construction regarding how to interpret the term "officer" in the civil context: "Whenever any term indicating an officer, is used, it shall be construed, when required, to mean any person authorized by law to discharge the duties of such officer." LAWS OF 1854, ch. 54, § 501, at 221 (currently codified as RCW 1.16.065). Thus, in 1909 in Washington, a "public officer" would have been either (1) someone in a position of public trust conferred by some authority or (2) a person authorized by law to discharge the duties of a person in a position of public trust.

As described below, applying that definition to Jasman's deputy coroner position, we hold that Jasman was a public officer subject to the forfeiture statute because a deputy is authorized by law to discharge the duties of a public officer. Applying the definition to Jasman's "chief investigator" position, we hold that Jasman was a public officer subject to the forfeiture statute only to the extent that he

functioned as a deputy coroner (i.e., to the extent that he functioned as a person authorized by law to discharge the duties of the county coroner). We clarify, however, that Jasman may be otherwise employed by a public officer.

### b. Deputy Coroner Position

Jasman's position as deputy coroner meets the ordinary meaning of "public officer" and the legislature's long-standing rule of construction from the civil procedure context. As deputy coroner, Jasman was legally authorized to discharge any coroner duties. *See* RCW 36.16.070 ("A deputy may perform any act which his or her principal is authorized to perform."). Since Jasman could perform any duty that the coroner could perform, his position meets our legislature's long-standing rule of construction regarding the term "officer": "Whenever any term indicating an officer is used it shall be construed, when required, to mean any person authorized by law to discharge the duties of such officer." RCW 1.16.065. We find this dispositive. We hold that the civil forfeiture statute bars Jasman from holding the position of deputy coroner because that position authorizes him by law to discharge the duties of a public officer—Grant County coroner.

### c. Chief Investigator Position

Jasman also seeks review of the Court of Appeals' decision to affirm the trial court's order enjoining Jasman from signing death certificates as chief investigator. We take this opportunity to clarify when someone labeled as an "employee" can be a

public officer subject to the forfeiture statute. Although "public employees" are generally not "public officers" subject to the forfeiture statute, an employee who functions as a public officer is subject to the forfeiture statute.

Public officers can employ both deputies and employees, but only deputies are authorized by law to discharge the duties of public officers. *See* RCW 36.16.070. RCW 36.16.070 allows public officers to "employ deputies *and* other necessary employees" if his or her duties "are greater than can be performed by the person elected to fill it," but it provides that only "[a] deputy may perform any act which his or her principal is authorized to perform." (Emphasis added.) Because employees are ordinarily not authorized by law to discharge the duties of public officers, employees are not ordinarily officers.

For example, if a coroner hired an assistant who merely assisted the coroner in fulfilling his or her statutory duties, the assistant would likely not be considered a "public officer" under the long-standing rule of construction regarding the term "officer" in the civil context. Under that rule, a person assisting with work would not be someone "authorized by law to discharge the duties of such officer." RCW 1.16.065.

However, we will not allow an elected official to circumvent the forfeiture statute by allowing an "employee" to wear a "deputy" hat (i.e., we will not allow an official to hire an "employee" but give that "employee" the authority to discharge the

official's statutory duties in order to avoid the forfeiture statute). In this instance, function trumps form—our analysis is driven by an employee's actual job duties, not simply his or her job title. As a practical matter, courts have prevented persons in positions of public trust from circumventing or directly undermining relevant legal requirements. *See, e.g., Missouri v. Seibert*, 542 U.S. 600, 616-17, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004) (finding a police officer's custodial interrogation tactic improper because it circumvented the warning requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)). In this case, we hold that employees who function as public officers are subject to the forfeiture statute.

Thus, here we hold that when Jasman was the "chief investigator," he was still a "public officer" subject to the forfeiture statute to the extent that he functioned as a deputy coroner (as a person authorized by law to discharge the duties of county coroner). We thus affirm the trial court's and Court of Appeals' rulings enjoining Jasman from signing death certificates. *Lee*, 183 Wn. App. at 65. By statute, a coroner has the authority to sign death certificates and determine the cause of unattended deaths. RCW 70.58.170, .180. One of Jasman's "duties as an investigator [was] to determine and certify the cause and manner of death in cases [the coroner's] office takes jurisdiction over." CP at 92. Jasman signed four death certificates in his capacity as chief investigator. By signing death certificates, Jasman was functioning as a coroner—a position from which he was disqualified pursuant to the forfeiture

13

statute. Thus, the Court of Appeals correctly affirmed the trial court's order enjoining Jasman from signing death certificates. While nothing prevents Coroner Morrison from employing Jasman in some capacity to assist Coroner Morrison in performing his duties, Jasman may not perform the statutory coroner duties himself.

2. *Coroner Morrison Was Not Entitled To Have a Special Prosecutor Defend Him (and Thus He Is Not Entitled to Attorney Fees)*

The petitioners argue that the trial court should have appointed a special prosecutor to defend Coroner Morrison when he intervened in the lawsuit. Since Coroner Morrison can no longer have a special prosecutor appointed, he seeks to recover attorney fees and costs. The Court of Appeals affirmed the trial court's decision denying appointment of a special prosecutor. *Lee*, 183 Wn. App. at 66-67. We affirm. By statute, prosecutors ordinarily have a duty to only advise county officers. RCW 36.27.020(2). However, prosecutors have a duty to represent county officers in suits against them for money damages and suits in which the State or county is the real party in interest. RCW 4.96.041(1), (2); *Osborn*, 130 Wn.2d at 625. Here, we hold that the prosecutor did not have a duty to represent Coroner Morrison. This lawsuit was a quo warranto action against Jasman, not a suit for money damages against Coroner Morrison or a case in which the county was the real party in interest. Thus, Coroner Morrison was not entitled to have the trial court appoint a special prosecutor to represent him and is not entitled to attorney fees and costs.

A court may appoint a special prosecutor for a party only if (1) the prosecutor has "the authority and the duty to represent that party in the given matter" and (2) "some disability . . . prevent[s] the prosecutor from fulfilling that duty." *Osborn*, 130 Wn.2d at 624-25. Here, the parties do not appear to dispute that Prosecutor Lee had a disability from representing Coroner Morrison because of a conflict of interest—since Prosecutor Lee instituted a quo warranto action against Jasman (and Coroner Morrison intervened), Prosecutor Lee was directly adverse to the person he would be representing—Coroner Morrison. *See* RPC 1.7(a)(1). The parties primarily dispute whether Prosecutor Lee had a legal duty to represent Coroner Morrison.

A prosecutor's duties are provided by RCW 36.27.020. Under that statute, prosecutors are required to "[a]ppear for and represent the state, county, and all school districts . . . in all criminal and civil proceedings in which the state or the county or any school district in the county may be a party." RCW 36.27.020(3). They are also required to "[b]e legal adviser to all county and precinct officers and school directors in all matters relating to their official business." RCW 36.27.020(2). Additionally, the legislature has provided that a prosecutor (or another private attorney) is required to defend a public officer who is sued in his or her official capacity for money damages, provided the officer or employee acted in good faith in performing his or her official duties. RCW 4.96.041(1), (2).

Furthermore, "courts have required prosecutors to represent county officers when the county or State, though unnamed in the action, was a real party in interest." *Osborn*, 130 Wn.2d at 625. For example, we held that a prosecutor had a duty to represent a probation officer in the context of a juvenile court proceeding because "[t]he effective and orderly conduct of juvenile hearings is a matter with which the state and county are both deeply concerned." *In re Welfare of Lewis*, 51 Wn.2d 193, 202, 316 P.2d 907 (1957).

Here, we hold that Prosecutor Lee did not have a legal duty to represent Coroner Morrison because Coroner Morrison was not sued for money damages and the State or county was not the real party in interest. This lawsuit was a quo warranto action against Jasman, challenging his authority to exercise the office of deputy coroner and sign death certificates, not a lawsuit against Coroner Morrison for money damages. Additionally, the circumstances of the quo warranto action do not indicate that the State or county was the real party in interest. Although the trial court allowed Coroner Morrison to intervene in the quo warranto action and found that Coroner Morrison was the real party in interest, the trial court also found that Coroner Morrison was "not a necessary party," and it never found that the county itself was the real party in interest. CP at 354. Without more, this falls short of being "a matter with which the state and county are both deeply concerned," such as "[t]he effective and orderly conduct of juvenile hearings" in *In re Lewis*, 51 Wn.2d at 202.

## CONCLUSION

We affirm the Court of Appeals. We hold that the forfeiture statute prohibits Jasman from being a deputy coroner and from signing death certificates as "chief investigator." Additionally, we hold that Coroner Morrison was not entitled to a special prosecutor's representation.

_Owens, J._

WE CONCUR:

_Madsen, C.J._

_Johnson, J._

_Wiggins, J._

_Fairhurst, J._

_González, J._

_Gordon McCloud, J._

_Stephens, J._

_Yu, J._