**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE___ DEC 1 5 2016
_[signature]_
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON ex rel. Gregory M. Banks, Prosecuting Attorney of Island County, | ) ) ) ) | No. 92749-9 |
| Appellant, | ) ) | En Banc |
| v. | ) ) | Filed ___DEC 1 5 2016___ . |
| SUSAN E. DRUMMOND, and Law Offices of Susan Elizabeth Drummond, PLLC; and ISLAND COUNTY BOARD OF COMMISSIONERS, | ) ) ) ) ) | |
| Respondents. | ) ) ) | |

WIGGINS, J. — Island County's board of commissioners hired Susan Drummond and her law office to provide legal services. Providing legal services is among the duties of county prosecuting attorneys as combined civil and criminal county counsel. Island County's prosecuting attorney, Gregory Banks, objected to Ms. Drummond's appointment because his office was able and willing to provide the necessary legal advice. Prosecutor Banks brought a quo warranto action in the Island County Superior Court, challenging Ms. Drummond's usurpation of his elected public

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

office.[1]  The superior court denied the claim on summary judgment, holding that boards of commissioners have authority under RCW 36.32.200 to freely hire outside counsel.  We reverse.

We hold that county boards of commissioners do not possess statutory authority to appoint outside counsel over the objection of an able and willing prosecuting attorney.

## FACTS

This case stems from ongoing budget and performance disputes between Island County's board of commissioners (Board) and the prosecuting attorney's office. Prosecutor Banks's office conducts a substantial amount of the county's land use and environmental law work. According to Prosecutor Banks, "Outside of criminal prosecution, land use law and the GMA [(Growth Management Act), ch. 36.70A RCW,] are the Civil Division's 'bread and butter.'"  Yet the Board is dissatisfied with the office's legal advice, alleging both a lack of adequate expertise and a persistent failure to defer to the Board's broad planning goals.  As a result, the Board seeks other, specialized counsel to help implement the GMA.  Prosecutor Banks, on the other hand, feels that his office is fully capable of providing satisfactory GMA-related counsel and that any shortfalls in his office's performance result from lack of adequate

---

[1] "Quo warranto" is Medieval Latin for "by what warrant."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1868 (2002).  Today, it is a common-law writ used to oust a person unlawfully exercising the powers of a public office. *Id.*

staffing and funding by the Board. As Prosecutor Banks dryly summarizes, "We have professional disagreements about policy and about budgets from time to time."

### A. Budget Issues

After 2008, Island County government faced extensive budget cuts. The Board's consent is required to establish and fund all unelected employee positions, including those in the prosecuting attorney's office. RCW 36.16.070 ("In all cases where the duties of any county office are greater than can be performed by the person elected to fill it, the officer may employ deputies and other necessary employees with the consent of the board of county commissioners. The board shall fix their compensation . . . ."). These budget reductions curtailed the number of staff in the prosecuting attorney's office.

The office continued to shrink through 2010. While staff cuts focused on the office's criminal division, pressure also increased on the civil division as civil staff were partly reassigned or not replaced upon retirement.[2] By the 2015 budget cycle, Prosecutor Banks informed the Board that his civil division was "'near the capacity of our resources.'" The Board agreed that "there are times [Prosecutor Banks] does not have the necessary staff or capability to provide the services required by the Board."

Matters escalated during the 2016 budget cycle. Prosecutor Banks requested funding for four new positions: two criminal and two civil staff. The Board granted

---

[2] For instance, in the 2014 budget cycle, a chief criminal deputy was restored with a salary made available due to the retirement of the senior chief civil deputy. Deputy Prosecuting Attorney Dan Mitchell was thereafter promoted to chief civil deputy, though with a much lower salary than the outgoing chief given his fewer years with the office.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

funding for the highest-priority criminal staff position and denied the remainder. Prosecutor Banks was disappointed by the Board's decision to instead retain extensive funds to employ outside civil counsel while failing to satisfy civil staffing requests in his office: "Oddly, the funds to improve . . . the prosecutors' office's capacity were not placed in my budget." This money was subsequently allocated to Ms. Drummond's contract as outside counsel.

## B. Performance and Personality Issues

Island County's financial tensions were also exacerbated by the Board's sense that its priorities were not well represented in the prosecuting attorney's office. The Board claimed that the prosecuting attorney's office responded too slowly, gave poor advice, and failed to support the Board's legislative goals. Yet distinguishing genuine performance issues from long-standing personality conflicts is challenging; both sides swapped insults and accusations of inadequate respect. For instance, while there is no dispute that, over the past two decades, Prosecutor Banks's office had mixed success defending GMA regulations enacted by the Board, the parties' explanations for these poor results diverge sharply.

On the one hand, Prosecutor Banks concluded that the "problems were caused by the County's [previous] use of outside counsel in the 1990s and early 2000s." This outside counsel, Prosecutor Banks claimed, cost the county "nearly a million dollars" and helped establish "regulations that were riddled with problems." Prosecutor Banks traced his office's losses in defending the GMA regulations to this past poor counsel, and to the Board's "risky decisions to push the boundaries of the GMA." As a result,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

he "resolved to keep GMA planning advice and litigation 'in house'" by "carefully cultivat[ing] the knowledge, skill, and resources" to effectively advise on GMA issues. Emphasizing that deputy prosecutor salaries cost a fraction of the money paid to outside counsel, Prosecutor Banks roots his resistance both in frugality and in his belief in his office's superior performance.

On the other hand, the Board saw the mixed results of Prosecutor Banks's office as indicative of obstinacy and inexperience, contrasting outside counsel's past performance as "a state model" of GMA implementation. Statements from two former commissioners suggest that Prosecutor Banks's office refused to provide substantive advice during the initial GMA implementation period, telling the Board to simply "'[f]ollow the law.'" Former Commissioner William McDowell described the office's apparent "refusal and/or inability to offer strategic advice on the GMA," while former Commissioner Mike Shelton characterized the proffered GMA advice as "weak." According to Commissioner Shelton, Prosecutor Banks's early failures defending the 1990s GMA implementation led the Board to believe that his office lacked "the capability [and] necessary experience" to perform GMA work going forward.

The Board generally objected to the prosecuting attorney's office's legal perspective on planning issues. Commissioner Jill Johnson criticized Chief Civil Deputy Prosecuting Attorney Dan Mitchell's "insistence that the Board could not accomplish our land use goals because our Critical Areas policy was rejected on appeal," asserting that "it was the Board's desire to strengthen the record to include progress since the time the Critical Areas Ordinance was written." Commissioner Jill

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Johnson felt that the strategy disconnect between the Board and Prosecutor Banks's office undermined "the Board's need for strategic guidance on how to position the County well to defend our ultimate land use policy choices." Although Deputy Prosecuting Attorney Mitchell "expressed a desire . . . to demonstrate that he could meet [the Board's] needs without bringing in outside counsel," the Board worried that the prosecuting attorney's office would "jeopardize the[] defensibility" of GMA decisions "by failing to vigorously defend those decisions in litigation." Citing this overall dissatisfaction with Deputy Prosecuting Attorney Mitchell's performance, Commissioner Johnson concluded "that GMA land use policy could no longer be Mr. Mitchell's area of concentration."

The Board instead allocated approximately $200,000 to $250,000 to hire specialized GMA counsel. At the time of the appointment, the Board did not describe Ms. Drummond's retention as the result of any refusal or failure of Prosecutor Banks, but rather as a way of "augment[ing]" his office: "[T]hey've . . . got their . . . acts together[;] this is just to supplement them because they're busy[;] they're shorthanded." At the same time, the Board anticipated that they would "pick and choose some of the issues" to leave with the prosecuting attorney's office "on a case by case basis," in order to "leverage [the] resources" of both Prosecutor Banks's and Ms. Drummond's offices.

The Board then passed Island County Board of Commissioners Resolution C-48-15, which provided for Ms. Drummond's appointment as outside counsel. The Drummond contract was subsequently reviewed and approved by letter from the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Island County Superior Court according to procedures laid out in RCW 36.32.200. The contract took effect on April 20, 2015. Ms. Drummond has since been advising the Board and performing other legal duties pursuant to the contract.

In reviewing the Drummond contract, Presiding Judge Vickie Churchill and Judge Alan Hancock considered Resolution C-48-15's "whereas" clauses that explained Ms. Drummond's appointment. One "whereas" clause noted that "the Prosecuting Attorney's office is unable to provide . . . comprehensive and proactive legal strategy, advice and assistance" on GMA issues. Judges Churchill and Hancock gave "due deference" to these listed reasons and accepted that Prosecutor Banks "is apparently unwilling or unable to provide some of the legal advice and services that the board is requesting." Judges Churchill and Hancock rejected Prosecutor Banks's argument that RCW 36.32.200 failed to provide independent authority for the Board's retention of outside counsel and, finding that the proposed employment was for "a proper purpose," approved the contract.

On August 12, 2015, Prosecutor Banks filed this quo warranto action on behalf of the State of Washington to remove Ms. Drummond from her exercise of the prosecuting attorney's office. The Board intervened and filed a counterclaim, seeking to have the Drummond contract declared valid. The parties then filed cross motions for summary judgment.

In its summary judgment motion, the Board contended that Prosecutor Banks was unable to adequately perform the necessary services because of "limited civil staff" and "delayed response times." Prosecutor Banks, while "strongly disput[ing]" the

7

Board's characterization of his office, argued that the quality of his work was irrelevant: "[E]ven if [the Board's statements] were true . . . [they] are insufficient, as a matter of law, to disenfranchise the voters."

After hearing oral argument, visiting Judge Brian Stiles granted summary judgment for the Board and Ms. Drummond and dismissed the quo warranto action in an oral opinion. Specifically, the court concluded that RCW 36.32.200's application was not limited to circumstances where the prosecuting attorney is unavailable "due to some sort of disability, death or vacancy or conflict of . . . interest." Judge Stiles further found that the statute was not unconstitutional on its face.[3]

The court's final written order granted the Board's and Ms. Drummond's motions for summary judgment, denied Prosecutor Banks's amended motion for summary judgment, granted the Board's cross claim for declaratory relief (affirming the validity of the Drummond contract), and dismissed the quo warranto action with prejudice. Noting that "nobody's really disputed or made an argument that there are any disputed facts," the court stated that it *would* find, if necessary, that the Drummond contract was made "for legitimate and appropriate purposes." There were no findings concerning Prosecutor Banks's ability or willingness to perform his duties as prosecuting attorney.

Prosecutor Banks appealed, and we granted direct review. We reverse.

---

[3] Prosecutor Banks did not argue that RCW 36.32.200 is facially invalid. Rather, he claims that the statute, if providing authority for boards of commissioners to freely hire outside counsel, is unconstitutional as applied.

8

## STANDARD OF REVIEW

We review summary judgments de novo. *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 444, 334 P.3d 541 (2014). Summary judgment is appropriate where there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We construe evidence and inferences from the evidence in favor of the nonmoving party. *Scrivener*, 181 Wn.2d at 444. When reviewing an appeal from summary judgment, we disregard any findings of fact that were entered by the trial court. *Hemenway v. Miller*, 116 Wn.2d 725, 731, 807 P.2d 863 (1991) (noting that "findings of fact on summary judgment are not proper, are superfluous, and are not considered by the appellate court").

The construction and meaning of a statute is a question of law that we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

Constitutional issues are also questions of law that we review de novo. *State v. Gresham*, 173 Wn.2d 405, 419, 269 P.3d 207 (2012). An as-applied constitutional challenge asserts that application of the statute in the specific context of the party's actions or intended actions is unconstitutional. *Wash. State Republican Party v. Pub. Disclosure Comm'n*, 141 Wn.2d 245, 282 n.14, 4 P.3d 808 (2000). Holding a statute unconstitutional as applied prohibits future application of the statute in a similar context, but the statute is not totally invalidated. *City of Redmond v. Moore*, 151 Wn.2d 664, 668-69, 91 P.3d 875 (2004).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ANALYSIS

Boards of commissioners lack authority to hire outside counsel without showing that the county's elected prosecuting attorney is unable or unwilling to perform the requisite duties.

I.  Quo Warranto Claim

The first issue is whether this action is truly a quo warranto claim.  A public quo warranto action is properly brought to oust any person who "intrude[s] upon" or "unlawfully . . . exercise[s] any public office." RCW 7.56.010(1).  The challenging party cannot bring an action until the challenged party begins his or her term of contract. *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 900-01, 969 P.2d 64 (1998). In addition, the action must be brought before the contract term expires.  *Cotton v. City of Elma*, 100 Wn. App. 685, 695, 998 P.2d 339 (2000).  When determining whether the target is exercising a public office, we consider whether that person is performing an official's statutory duties, not the particular title granted to the challenged party.  *Grant County Prosecuting Att'y v. Jasman*, 183 Wn.2d 633, 645, 354 P.3d 846 (2015).

Here, the Board and Ms. Drummond contend that a quo warranto action is improper because Ms. Drummond was not named a county or deputy prosecutor, nor does she serve in any other public office.  However, Ms. Drummond was hired to provide legal advice and to "defend[] adopted legislation" for the county. The prosecuting attorney is similarly required to serve as "legal adviser" to the county legislative authority and defend the county in civil proceedings.  RCW 36.27.020(1)-

10

(3). These duties plainly overlap. The fact that Ms. Drummond has not been given the title of a county officer is irrelevant under *Jasman*. 183 Wn.2d at 645. Therefore, the prosecuting attorney was entitled to bring this quo warranto suit for ouster.

Respondents Board and Ms. Drummond bring a number of other tangential and unpersuasive challenges to this quo warranto action, which we dispose of briefly. First, they argue that this action is truly an appeal of Resolution C-48-15, in which the Board retained Ms. Drummond's services, and is thus untimely. We note simply that the availability of one type of action does not preclude another action properly brought—which this is.

Second, they strongly argue that this action is a personally motivated claim against the Board, and as such presents both ethical and legal violations. We reject this view of the case. This is a claim for usurpation of the office of a public official; quo warranto claims specifically permit prosecuting attorneys to patrol for unconstitutional delegations of public officials' authority. RCW 7.56.020. Moreover, any person in public office may file an information where the action concerns the person's own office. *Id.*

Third, they argue that this action is barred by estoppel, as Prosecutor Banks did not object to previous board decisions to hire outside counsel. Yet a prosecuting attorney's discretion to refrain from acting on a particular issue in no way forecloses his ability to take enforcement action in the future. *See State ex rel. Fishback v. Globe Casket & Undertaking Co.*, 82 Wash. 124, 133, 143 P. 878 (1914) ("An officer of the

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

state . . . cannot grant indulgences to commit new or continuing offenses."). The law cannot be so easily excused.

This quo warranto action was properly filed.

II. Statutory Authority

The Board and Ms. Drummond argue that the Board acted pursuant both to "its specific contracting authority under RCW 36.32.200" and according to "its inherent general contracting authority under RCW 36.01.010 and RCW 36.32.120(6)." We address the specific and general authority claims in turn.

When interpreting a statute, the court's fundamental objective is to ascertain and give effect to the legislature's intent. *Hama Hama Co. v. Shorelines Hr'gs Bd.*, 85 Wn.2d 441, 445, 536 P.2d 157 (1975). We begin with the plain meaning of the statute. *See Campbell & Gwinn*, 146 Wn.2d at 9. In doing so, we consider the text of the provision, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole. *Id.* at 10-11. If the meaning of the statute is plain on its face, then we must give effect to that meaning as an expression of legislative intent. *Id.* If, after this inquiry, the statute remains ambiguous or unclear, it is appropriate to resort to canons of construction and legislative history. *Id.* at 12.

Counties are "but arms or agencies of the state organized to carry out or perform some functions of state government." *State ex rel. Taylor v. Superior Court*, 2 Wn.2d 575, 579, 98 P.2d 985 (1940). They, as "instrumentalities of the state, have

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

no powers except those expressly conferred by the constitution and state laws, or those which are reasonably or necessarily implied from the granted powers." *Id.*

### A. *Specific Statutory Authority Under RCW 36.32.200*

The parties dispute whether compliance with procedures required under RCW 36.32.200 are both necessary *and sufficient* to make a contract lawful. In determining the implications of RCW 36.32.200, we must first consider the words of the statute, which reads in full:

> **Special attorneys, employment of.** It shall be unlawful for a county legislative authority to employ or contract with any attorney or counsel to perform any duty which any prosecuting attorney is authorized or required by law to perform, unless the contract of employment of such attorney or counsel has been first reduced to writing and approved by the presiding superior court judge of the county in writing endorsed thereon. This section shall not prohibit the appointment of deputy prosecuting attorneys in the manner provided by law.
>
> Any contract written pursuant to this section shall be limited to two years in duration.

The implications of the statute's negative phrasing ("unlawful . . . unless") are not immediately obvious. Ms. Drummond and the Board construe RCW 36.32.200 to mean that any contract that is in writing, approved by a superior court judge, and for a term not exceeding two years is necessarily lawful. Asked to describe the statute's full implications, the Board's counsel explained, "Maybe the easier way to understand [RCW 36.32.200] is to flip the condition. And so if the contract is less than two years, reduced to writing, approved by the superior court judges, then it's fine. There's no restriction on the Board's ability to do that."

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"Flipping" the reading of the statute in this manner violates rules of formal logic in a manner known as the fallacy of the inverse or "denying the antecedent." *State v. Brush*, 183 Wn.2d 550, 568 n.8, 353 P.3d 213 (2015) (Wiggins, J., concurring in part and concurring in result) (citing PATRICK J. HURLEY, A CONCISE INTRODUCTION TO LOGIC 323 (9th ed. 2005)). Under the rules of formal logic, conditional statements take the form, "'If P, then Q.'" *Id.* P is the antecedent and Q is the consequent. The fallacy of the inverse occurs when one takes a true statement presented in this form, negates both the antecedent and consequent, and concludes that "if not P, then not Q" must also be true. Denying the truth of the antecedent does not necessarily negate the consequent. For example:

Premise 1: If it is snowing, then it is cold outside.

Premise 2: It is <u>not</u> snowing.

Conclusion: It is <u>not</u> cold outside.

The structure of RCW 36.32.200 is "if P (procedures are not followed), then Q (contract is unlawful)." It does not follow that "if not P (procedures *are* followed), then not Q (contract *is* lawful)." In sum, a more accurate restatement of RCW 36.32.200 would be: "When the Board can retain special counsel, its contract to do so must be in writing, be approved by the presiding superior court judge, and last no longer than two years." The Board's authority to contract must stem from an independent source.

Understanding RCW 36.32.200 as a limit on, rather than as an expansion of, the Board's authority to contract is consistent with the statute's legislative history. In

*State v. Drummond (Susan E.) & Island County*
*Bd. of Comm'rs,* No. 92749-9

1983, four senators proposed Senate Bill 3151 (S.B. 3151), which would have established a new and affirmative grant of authority for boards of commissioners:

> NEW SECTION. Sec. 1. There is added to chapter 4, Laws of 1963 and to chapter 36.27 RCW a new section to read as follows:

> Duties of the prosecuting attorney, as set forth in RCW 36.27.020, shall in any county entering into a contract pursuant to section 2 of this act, be modified to the extent and in the manner provided by the contract.

> NEW SECTION. Sec. 2. There is added to chapter 4, Laws of 1963 and to chapter 36.27 RCW a new section to read as follows:

> The legislative authority of any county may contract to employ or retain one or more persons admitted as attorneys and counselors by the courts of this state to perform any or all of the following legal services on behalf of the county:

> (1) Act as legal advisor to the county officers, providing them with legal advice regarding the conduct of their public duties and drafting legal instruments used by them to perform their official business; and

> (2) Appear for and represent the county in all civil proceedings to which the county or its officers are parties.

S.B. 3151, 48th Leg., Reg. Sess. (Wash. 1983). The significance of the proposed changes was synopsized by the senate bill report, describing the proposed new authority to hire legal advisers and noting that the former statute "prohibit[ing] a county board of commissioners from hiring special attorneys is repealed." S.B. REP. ON S.B. 3151, 48th Leg., Reg. Sess., Synopsis at 1 (Wash. 1983).

The potential impact of S.B. 3151 was conveyed in a letter from the Jefferson County Prosecuting Attorney at the time, John Raymond, to the Washington Association of Prosecuting Attorneys, which was lobbying the legislature on the issue. Letter from John F. Raymond, Jefferson County Prosecuting Att'y, to Michael Redmond, Wash. Ass'n of Prosecuting Att'ys 1 (Jan. 25, 1983) (Raymond Ltr.); H.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Local Gov't Comm., Agenda & Minutes (Apr. 5, 1983). If boards of commissioners can hire their own counsel, Raymond objected, the boards could reduce the office of the prosecuting attorney's budget dramatically, requiring the prosecuting attorney to "[lay] off one-third to one-half of his staff." Raymond Ltr. at 1. Then, because boards would also be able to "fire their 'County Attorney' at any time," the prosecuting attorney would be left to "take up the workload again at a minute's notice." *Id.* The passage of S.B. 3151, Raymond summarized, "could be catastrophic." *Id.* at 2.

Of greater constitutional significance is Raymond's concern that S.B. 3151 could "turn[] the office of Prosecuting Attorney into a political football" by transforming civil counsel into a patronage position. *Id.* at 1. It was precisely this patronage concern that stirred many of the western states' constitutional conventions to establish the election of county attorneys. *See* Michael J. Ellis, Note, *The Origins of the Elected Prosecutor*, 121 YALE L.J. 1528, 1531 (2012). (The implications of Wash. Const. art. XI, § 5, establishing the election of county prosecuting attorneys, are discussed in greater detail in Section III, below.)

While S.B. 3151 sought "to unfetter a legislative authority's ability to hire attorneys related to all aspects of civil matters," this bill was ultimately rejected. Br. of Amicus Curiae Wash. State Ass'n of Counties (WSAC) at 12; 1 SENATE JOURNAL, 48th Leg., Reg. Sess., at 554-55 (Wash. 1983). As passed, Substitute S.B. 3151 included

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

only modest changes to the original RCW 36.32.200 statute.[4] *Id.* Respondents Board and Ms. Drummond urge us to read into RCW 36.32.200, as reenacted, an affirmative grant of authority for boards of commissioners to hire outside counsel—authority that the legislature rejected when it rejected S.B. 3151.[5]

It is this court's duty to discern and give effect to the intent of the legislature. *Hama Hama Co.*, 85 Wn.2d at 445. The legislature specifically declined to grant boards the affirmative authority to hire outside counsel. Instead, the legislature reenacted a statute that, by its plain language, limits rather than grants commissioners' ability to hire. We must look elsewhere for a source of the Board's asserted authority to hire outside counsel; it is not to be found within the scope of RCW 36.32.200.

---

[4] These changes included allowing a single superior court judge to review outside counsel contracts, rather than the previous majority requirement. SUBSTITUTE S.B. 3151, 48th Leg., Reg. Sess. (Wash. 1983).

[5] The Board and WSAC also stress the policy reasons for finding an affirmative grant of authority in RCW 36.32.200. WSAC argues that requiring approval by prosecuting attorneys before appointing outside counsel would "establish a new, onerous and unnecessary legal bar." The Board echoes this claim in its reply to the WSAC brief, claiming that "Banks' theory will . . . destroy the balance of powers, substituting an unworkable system that invests him with the power to control the Board's legislative and executive actions." Both briefs, however, cite to letters filed by Washington county boards of commissioners indicating that prosecuting attorneys' approval is widely sought and regularly granted. Thus, no additional procedures beyond what are routinely employed would be required for compliance.

*State v. Drummond (Susan E.) & Island County*
*Bd. of Comm'rs*, No. 92749-9

### B. General Statutory Authority under RCW 36.32.120 and RCW 36.01.010

The Board argues that it has implied authority to hire outside counsel under counties' general powers statutes: RCW 36.01.010 and RCW 36.32.120(6).[6] The first, RCW 36.01.010, details a county's "corporate powers" and provides the authority "to sue and be sued." (Formatting omitted.) The second, RCW 36.32.120(6), requires a county's board of commissioners "in the name of the county to prosecute and defend all actions for and against the county." These two statutes, the Board and Ms. Drummond argue, provide the implied authority to hire outside counsel.

Our ability to infer authority where not explicitly stated is limited: "Boards of county commissioners are creatures of the statute. They must pursue and exercise the powers conferred upon them in strict compliance with the statute." *Nw. Improvement Co. v. McNeil*, 100 Wash. 22, 28, 170 P. 338 (1918).

As a general matter, we have declined to infer permission to appoint private service providers to perform the duties of a public officer. *Id.* at 27-34. In *McNeil*, a board of commissioners hired a private assessor to value undeveloped coal and timber for purposes of taxation. *Id.* at 25. The board justified its claim of authority to hire an outside assessor by reference to its general powers statute, requiring the board to "'have the care of the county property and the management of the county

---

[6] The Board's implied powers are also embedded in RCW 36.01.010: "The several counties . . . shall have capacity . . . to do all other necessary acts in relation to all the property of the county."

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

funds and business.'" *Id.* at 27 (quoting Rem. 1915 Code, subdiv. 6, § 3890). This court framed the issue thus:

> Whether the county commissioners, however necessary a thing may seem to be, have the power to appoint a private individual to do a thing, or perform a duty, which the law imposes upon one of the regular county officers—one who is charged with the doing of the very thing sought to be accomplished by independent contract with a stranger to the county.

*Id.* at 33. Whether the expert assessor provided a service superior to the county assessor was not considered. Instead, we reasoned that the county cannot require the public to pay for performance of those "duties expressly delegated by statute to other administrative county officers." *State ex rel. Hunt v. Okanogan County*, 153 Wash. 399, 421, 280 P. 31 (1929) (restating our holding in *McNeil*). If we allowed a county board to enter into contracts for services already delegated to a public officer, then county commissioners might "entirely usurp the powers of the [public official] and functions of his office on the theory that he or they were incompetent." *McNeil*, 100 Wash. at 33. Even incompetence, we held, was inadequate justification to deprive the voters of their chosen public officer.

However, *McNeil* appears to be in tension with two early pre- and post-statehood cases acknowledging that at least some authority to employ outside counsel is inherent in RCW 36.32.120(6). *Martin v. Whitman County*, 1 Wash. 533, 536, 20 P. 583 (1889) (noting that the right to employ private counsel was established by a territorial statute permitting county officers to "prosecute and defend all actions"); *Reed v. Gormley*, 47 Wash. 355, 91 P. 1093 (1907) (rejecting the notion that removing a provision in the prosecutor's duties statute, expressly providing for the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

commissioners to employ their own attorneys, substantively changed the general powers statute). Neither of these cases involved any objection by the prosecuting attorney. In *Reed*, a letter from the prosecuting attorney supported the contract. 47 Wash. at 356. Despite this express consent, a taxpayer sought to enjoin the payment of outside counsel, arguing the commissioners lacked any power to contract for legal services. We noted, "'[I]t is not unfrequently the case that [the prosecuting attorney] may be unable to attend to the business of the county, or [the county's] interests in some particular suit may be of such magnitude that the assistance of other counsel would be very desirable, or possibly indispensable.'" *Id.* at 357-58 (quoting *Ellis v. Washoe County*, 7 Nev. 291, 293 (1872)). Thus, with the consent of the prosecuting attorney, the board was permitted to commit public resources to an outside contract.

The possibility of necessity, touched on only briefly in *Reed*, was expanded by our subsequent decision in *State v. Gage*. 107 Wash. 282, 284-85, 181 P. 855 (1919) (construing the general powers phrase "may sue and be sued"). In *Gage*, we held that the general power to "'sue and be sued'" allows a local government entity to employ outside counsel "when . . . the prosecuting attorney cannot act and the necessity for legal aid is urgent." *Id.* at 285 (quoting LAWS OF 1909, ch. 97, § 2, at 265). Taken together with *Reed* and *Martin*, *Gage* refines our previous holdings concerning the power to hire outside counsel: To perform their own duties, commissioners understandably require the assistance of counsel, and when the prosecuting attorney is unable to perform his duties, the board's general powers statutes fill the gap.

20

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We can harmonize *Reed* and *Gage* with our holdings in *McNeil* and *Hunt* by understanding that, in order for a board to hire an outside party to perform duties delegated to a public official, that official must be, not simply "incompetent" or otherwise undesirable, but truly unavailable or unable to perform.[7] *McNeil*, 100 Wash. at 31. A conflict of interest is construed as adequate grounds to find a prosecuting attorney "unavailable" or "disabled." *See Westerman v. Cary*, 125 Wn.2d 277, 301, 892 P.2d 1067 (1994).

Here, the Board alleges that Prosecutor Banks and his office lack adequate expertise to advise on GMA issues, that Prosecutor Banks's office fails to respect the Board's policy goals, and that outside counsel would provide a superior service. Yet the county prosecuting attorney is indisputably required to provide the Board with legal advice. RCW 36.27.020(1) ("The prosecuting attorney shall . . . [b]e legal adviser of the legislative authority . . . ."). Under our holdings in the *McNeil* and *Gage* line of cases, dissatisfaction with (or even incompetence by) a county official fails to justify billing the public for the cost of an outside replacement.

While the Board further argues that Prosecutor Banks is unable to perform the required services, Prosecutor Banks disputes this argument; he contends that his office, although seeking more resources, has cultivated the expertise to provide

---

[7] Courts similarly distinguish disagreement from inability when considering the appointment of special counsel pursuant to RCW 36.27.030 (providing for the temporary court appointment of "some qualified person" when the prosecuting attorney is "unable to perform his or her duties"). *See Hoppe v. King County*, 95 Wn.2d 332, 340, 622 P.2d 845 (1980) (holding that a county official was not entitled to second-guess the judgment of the prosecuting attorney by means of outside counsel hired at the taxpayers' expense).

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

quality GMA counsel. Moreover, any arguments by the Board that Prosecutor Banks's office is unable to perform due to resource constraints are undercut by the fact that the Board controls the office's budget and staffing. On appeal from a motion for summary judgment, we consider the facts in the light most favorable to Prosecutor Banks, the nonmoving party. Thus, we are obliged to entertain Prosecutor Banks's version of events: that the Board, dissatisfied with the relatively conservative legal advice provided by his office, deliberately underfunded the civil division and used the retained public funds to hire more amenable outside counsel.

Far from conclusively establishing that Prosecutor Banks was unable to perform the required services, the facts here demand the reverse. Reversing the summary judgment presumption and construing the evidence in the light most favorable to the Board and to Ms. Drummond, we find no evidence sufficient to persuade a reasonable jury that Prosecutor Banks was unable or unwilling to serve. While there are facts to support an argument that Prosecutor Banks and his office have offered less than a satisfactory performance, we reiterate that incompetence is insufficient to find a public official unavailable or disabled. And while there is evidence that the prosecuting attorney's office lacked adequate resources to provide the services demanded by the Board, one cannot simultaneously prevent and demand performance.[8]

---

[8] Nor was the Board denied its right to counsel. Even in the criminal context, the accused is not entitled to new appointed counsel merely because of dissatisfaction or disagreement with appointed counsel. *See, e.g., State v. Stenson*, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997) (holding that an irreconcilable conflict may justify appointing new counsel, but that a "general

State v. Drummond (Susan E.) & Island County
Bd. of Comm'rs, No. 92749-9

Thus, even allowing for the implied general authority to retain counsel in case of Banks's inability to perform his duties, the Board has not established that it is entitled to a judgment as a matter of law premised on the prosecuting attorney's office's inability to provide GMA counsel.[9] And because we find, as a matter of law, that Prosecutor Banks is able and willing to perform his duties, the Board lacks statutory authority to appoint outside counsel.[10]

III. Constitutional Authority

Our statutory analysis is consistent with the dictates of article XI, section 5 of the Washington Constitution. Because we dispose of this case on statutory grounds, we discuss the constitutional implications only briefly.

---

loss of confidence or trust is not sufficient to substitute new counsel" under the Sixth Amendment), *cert. denied*, 523 U.S. 1008 (1998). Here, the fact that the voters, rather than the Board, selected Prosecutor Banks, does not deny the Board adequate counsel. And while the Board is entitled to make the ultimate decision as to its objectives, it is not entitled to counsel that shares the Board's views. RPC 1.2(a) ("a lawyer shall abide by a client's decisions concerning the objectives of representation"), (b) ("A lawyer's representation of a client . . . does not constitute endorsement of the client's political, economic, social or moral views.").

[9] There remains other recourse for a county dissatisfied with its prosecuting attorney. *See In re Recall of Sandhaus*, 134 Wn.2d 662, 670, 953 P.2d 82 (1998) (noting that "whether [the prosecuting attorney] is doing a satisfactory job of managing his office is a quintessential political issue which is properly brought before the voters at a regular election"); *see also Osborn v. Grant County*, 130 Wn.2d 615, 624, 926 P.2d 911 (1996) (noting that when "an official makes a poor hiring decision, the official is accountable not to the board of commissioners, but to the public. If the public dislikes [the decision], the ballot is its recourse").

[10] In addition to the unavailability of the prosecuting attorney, there are two other circumstances, not relevant here, that would justify the use of RCW 36.32.200: (1) the office is vacant (pursuant to RCW 36.16.115) or (2) the prosecuting attorney consents (*see, e.g., Reed*, 47 Wash. 355 (wherein the prosecuting attorney approved the hiring of private counsel in writing).

23

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Article XI, section 5 provides, in part, as follows: "The legislature, by general and uniform laws, shall provide for the election in the several counties of . . . prosecuting attorneys." When the voters choose an elected official, they necessarily choose who will be responsible for the duties of that office. It would be fruitless to delegate the selection of county officers to the voters if the duties of those officers could be freely delegated to officers appointed by other government branches. As we stated in *State ex rel. Johnston v. Melton*:

> "The naming of [constitutional] officers amounted to an implied restriction upon legislative authority to create other and appointive officers for the discharge of such functions. . . . If these constitutional offices can be stripped of a portion of the inherent functions thereof, they can be stripped of all such functions, and the same can be vested in newly created appointive officers, and the will of the framers of the constitution thereby thwarted."

192 Wash. 379, 390, 73 P.2d 1334 (1937) (quoting *Ex Parte Corliss*, 16 N.D. 470, 475, 114 N.W. 962 (1907)); *see also* THOMAS M. COOLEY, A TREATISE ON THE CONSTITUTIONAL LIMITATIONS 136 (5th ed. 1883) ("That such powers as are specially conferred by the constitution upon the governor, or upon any other specified officer, the legislature cannot require or authorize to be performed by any other officer or authority; and from those duties which the constitution requires of him he cannot be excused by law.").

In the case of prosecuting attorneys, this section means that the legislature "cannot interfere with the core functions that make them 'prosecuting attorneys' in the first place." *State v. Rice*, 174 Wn.2d 884, 905, 279 P.3d 849 (2012) (noting that "the legislature is free to establish statutory duties that do not interfere with core

24

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

prosecutorial functions"). We construe "core functions" according to a given office's historical usage: "'In naming the county officers in § 5, Article 11 of the constitution, the people intended that those officers should exercise the powers and perform the duties *then recognized as appertaining to the respective offices* which they were to hold.'" *Id.* (emphasis added) (quoting *Melton*, 192 Wash. at 388).[11]

The historical functions and concomitant duties of prosecuting attorneys have remained largely unchanged since territorial times. In 1879, the general laws described the prosecuting attorney's responsibilities as follows:

> Each prosecuting attorney shall be the legal advisor of the board of county commissioners of his county or district; he shall also prosecute all criminal and civil actions, in which the territory is a party, the jurisdiction of the action being in his county or district, or in which his county or district is a party; defend all suits brought against the territory, the jurisdiction of which is in his county or district; and all suits brought against the county or district in which he was elected. . . .[12]

The prosecuting attorney's responsibilities are much the same today, beginning as follows:

> Be legal adviser of the legislative authority, giving it his or her written opinion when required by the legislative authority or the chairperson thereof touching any subject which the legislative authority may be called or required to act upon relating to the management of county affairs.

RCW 36.27.020(1). The fact that the prosecuting attorney also prosecutes

---

[11] At least one other state Supreme Court has held that certain duties are "merely incidental and casual, and without relation to the characteristics" of a particular office. *Ex Parte Corliss*, 16 N.D. at 492 (describing the drawing of jurors as a duty only incidental to any county office). We have no comparable precedent.

[12] LAWS OF 1879, § 6, at 93.

25

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

crimes does not diminish the history and centrality of the office's role as "legal adviser" to the county.[13]

Here, the Board argues that "it cannot be rationally asserted that GMA advice is a 'core function' . . . when there was no such thing as the GMA in the 1820s or later years leading up to statehood in 1889." Similarly, the superior court in this case stated that "[g]rowth management and land use are . . . certainly not core functions that flowed from something back in the 1880s because I don't think they had that kind of law back then."

The flaw in this reasoning is that the terms "legal" in "legal adviser" would be so narrowly construed as to exclude any dealings with laws postdating the ratification of the constitution. By this logic, the prosecuting attorney's duty to "prosecute all criminal and civil actions" would be similarly confined to those laws enacted by 1889. If we construe the constitution, as we construe our statutes, to effectuate the will of the drafters, then we poorly serve their intent by constraining "legal adviser" to mean only that advice concerning statutory frameworks of a particularly advanced vintage.

---

[13] The inference that providing legal services to county officials is a central role of the prosecuting attorney is supported by the persuasive opinion of the Washington attorney general. In a 1973 letter opinion, the attorney general described "the problem confronting the legislature in any attempt to authorize the employment of attorneys by county agencies without a constitutional amendment." 1973 Letter Op. Att'y Gen. No. 115. Specifically referring to our decision in *Melton*, 192 Wash. 379, the opinion warned that any legislation permitting outside attorneys "to be vested with any of the present powers and functions of the prosecuting attorney as legal counsel for all county officers . . . would in all probability be held to be in conflict with Article XI, § 5." 1973 Letter Op. Att'y Gen. No. 115.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The prosecuting attorney provides legal advice; this service has been the responsibility of the prosecuting attorney's office since well before the constitution was adopted. Prosecutor Banks seeks to perform his duty as the official chosen by Island County's electors. Even if a board of commissioners had statutory authority to hire outside counsel over the objection of an able and willing prosecuting attorney—which it does not—the appointment would unconstitutionally deny the electorate's right to choose who provides the services of an elected office.

## CONCLUSION

We hold that county boards of commissioners do not possess statutory authority to appoint outside counsel over the objection of an able and willing prosecuting attorney. RCW 36.32.200 does not provide county boards of commissioners with an affirmative grant of authority to hire outside counsel, but instead requires compliance with additional procedures as a check on any authority otherwise granted. Nor do county boards of commissioners' general powers statutes, particularly RCW 36.32.120 and RCW 36.01.010, authorize paying outside counsel from the public purse where the county's prosecuting attorney is available. Allowing a county board of commissioners to unilaterally contract with outside counsel over the objection of an able and willing prosecuting attorney would unconstitutionally curtail the right of the county's voters to choose their elected official.

27

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Drummond (Susan E.) & Island County*
*Bd. of Comm'rs*, No. 92749-9

Therefore, we reverse the decision of the superior court. Island County Board of Commissioners Resolution C-48-15, providing for Ms. Drummond's retention, is ultra vires and void. We remand for an entry of judgment of ouster against Ms. Drummond and for further proceedings, if any, consistent with this opinion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Drummond (Susan E.) & Island County*
*Bd. of Comm'rs*, No. 92749-9

_____
Wiggins, J.

WE CONCUR.

_____
Madsen, C.J.

_____
Johnson, J.

_____
Owens, J.

_____
Fairhurst, J.

_____
Stephens, J.

_____
González, J.

_____
Gordon McCloud, J.

_____
Yu, J.

29