**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 26, 2021

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 26, 2021

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re Citizen Complaint by | No. 98613-4 |
| | EN BANC |
| THOMAS W. STOUT | |
| Petitioner | |
| v. | Filed: August 26, 2021 |
| | |
| GEENE D. FELIX | |
| Respondent. | |

MONTOYA-LEWIS, J.—This case asks us to decide whether a citizen's affidavit is sufficient to initiate criminal proceedings under the citizen complaint rule, CrRLJ 2.1(c). Under the citizen complaint rule, "[a]ny person" may initiate criminal proceedings. CrRLJ 2.1(c). To begin the process, the person must appear before a judge to present their allegations. They may also file an affidavit, and the judge may provide the potential defendant, the prosecuting attorney, and other potential witnesses an opportunity to be heard. Then, the judge considers the evidence, makes a probable cause determination, and weighs a number of factors before authorizing the citizen to sign and file the criminal complaint.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We hold that under CrRLJ 2.1, criminal proceedings are initiated by the filing of a criminal complaint, and an affidavit under CrRLJ 2.1(c) is only part of the citizen's request for the court's approval to file the complaint. Here, the criminal complaint was not filed before the expiration of the statute of limitations. Therefore, we affirm the district court's dismissal of the citizen complaint as untimely.

## I. FACTS AND PROCEDURAL HISTORY

Geene Felix is a Department of Social and Health Services[1] social worker who was involved in child welfare matters regarding Thomas Stout's two children. On October 4, 2016, Felix signed two dependency petitions under penalty of perjury, alleging that Stout's children were dependent. Stout disputed Felix's factual account in the dependency petitions. He alleged that Felix committed the crime of false swearing when she made certain statements in the petitions. The crime of false swearing is a gross misdemeanor with a two-year statute of limitations. RCW 9A.72.040(2); RCW 9A.04.080(1)(j).

On October 3, 2018—one day short of two years after Felix filed the dependency petitions—Stout filed an affidavit of complaining witness in Mason County District Court, seeking to institute a citizen complaint against Felix. The

---

[1] At the time, child welfare cases were handled by the Department of Social and Health Services. The agency is now part of the Department of Children, Youth, and Families.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

court issued a summons notice to Felix, notified Mason County Prosecutor Michael Dorcy, and set a probable cause hearing for two weeks later.

The probable cause hearing began on October 19, 2018. The court noted that the statute of limitations for the crime of false swearing was two years and that the limitations period had passed. The court requested briefing from the parties regarding the timeliness of the citizen complaint as well as whether there was probable cause to support the complaint. It continued the matter to December 14, 2018.

At the December hearing, the court first considered the timeliness issue. Felix argued that a criminal action can be commenced only by the filing of an indictment or complaint, which must be done within the statute of limitations. Stout argued that an affidavit in support of a citizen complaint was an exception to the complaint requirement, the affidavit was sufficient to initiate criminal proceedings, and he timely filed it within the statute of limitations. Dorcy did not directly address the statute of limitations issue, but he challenged the merits of Stout's citizen complaint and the constitutionality of the citizen complaint rule. The court agreed with Felix and ruled that "[a] criminal action is commenced by filing a complaint." Clerk's Papers (CP) at 3. Therefore, because Stout did not file a criminal complaint within the two-year statute of limitations, the court dismissed his citizen complaint as untimely. The court did not reach the merits of the case.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Stout moved for reconsideration, and the district court denied his motion. He appealed to the Mason County Superior Court, which affirmed the district court's ruling.[2] He then sought review in the Court of Appeals, and the commissioner denied discretionary review. The Court of Appeals also denied his request to modify the commissioner's ruling. The Supreme Court commissioner granted discretionary review.

## II. ANALYSIS

Interpretation of a court rule is a question of law that we review de novo. *State v. McEnroe*, 174 Wn.2d 795, 800, 279 P.3d 861 (2012). We apply the principles of statutory construction, beginning with the plain meaning of the rule. *Id.*; *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-12, 43 P.3d 4 (2002). The plain language of the rule is not read in isolation but "in context, considering related provisions, and in light of the statutory or rule-making scheme as a whole." *State v. Stump*, 185 Wn.2d 454, 460, 374 P.3d 89 (2016) (citing *State v. Conover*, 183 Wn.2d 706, 711, 355 P.3d 1093 (2015)).

The parties dispute whether a citizen's affidavit initiates criminal proceedings under the citizen complaint rule. The parties also dispute the constitutionality of the citizen complaint rule. We will not reach a constitutional issue "unless absolutely

---

[2] The superior court also granted Felix's motion to change the case caption from *Mason County, State of Washington v. Geene D. Felix* to *In re Citizen Complaint by Thomas W. Stout v. Geene D. Felix*.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

necessary to the determination of the case." *State v. Hall*, 95 Wn.2d 536, 539, 627 P.2d 101 (1981). Therefore, we first address the statute of limitations issue.

In district court, criminal proceedings are governed by the Criminal Rules for Courts of Limited Jurisdiction. CrRLJ 1.1. There are three ways to initiate criminal proceedings in district court; two are familiar and one—the citizen complaint rule—has been used seemingly rarely.

First, CrRLJ 2.1(a)(1) states that "[e]xcept as otherwise provided in this rule, all criminal proceedings shall be initiated by a complaint." The rule requires that the complaint contain specific information, including the defendant's identifying information, a statement of facts, and the particular law the defendant is alleged to have violated; the complaint also must be signed by the appropriate prosecuting authority. CrRLJ 2.1(a)(2), (3). If the complaint fails to cite to the correct law, it may be dismissed if it prejudiced the defendant. CrRLJ 2.1(a)(2) ("Error in the citation or its omission shall not be ground for dismissal of the complaint or for reversal of a conviction if the error or omission did not mislead the defendant to his or her prejudice."). The original complaint must be filed with the clerk of the court. CrRLJ 2.1(d)(1). Once the complaint is filed, the court may direct the clerk to issue an arrest warrant or a summons to be served on the defendant. *See generally* CrRLJ 2.2.

Second, criminal proceedings can be initiated by a peace officer serving a citation and notice on the defendant. CrRLJ 2.1(b) (the "peace officer exception").

*In re Citizen Complaint by Thomas Stout v. Geene Felix*
No. 98613-4

This is an exception to the complaint requirement, and the citation and notice is treated the same as a criminal complaint. CrRLJ 2.1(b)(5) ("[T]he citation and notice shall be deemed a lawful complaint for the purpose of initiating prosecution of the offense charged therein."). The peace officer exception also requires that the citation be on a specific form and that the citation and notice contains specific information, including the defendant's identifying information, the charged offense, and when the defendant must appear in court. CrRLJ 2.1(b)(1), (3). Similar to the requirements for a complaint, the citation and notice must also be signed by the citing officer and the original must also be filed with the clerk of the court. CrRLJ 2.1(b)(5), (d)(1).

Finally, CrRLJ 2.1(c) provides a third way to begin a criminal case—the citizen complaint rule. Under this rule, a citizen may appear in district court and seek to initiate criminal proceedings:

> Any person wishing to institute a criminal action alleging a misdemeanor or gross misdemeanor shall appear before a judge empowered to commit persons charged with offenses against the State, other than a judge pro tem. The judge may require the appearance to be made on the record, and under oath. The judge may consider any allegations on the basis of an affidavit sworn to before the judge. The court may also grant an opportunity at said hearing for evidence to be given by the county prosecuting attorney or deputy, the potential defendant or attorney of record, law enforcement or other potential witnesses. The court may also require the presence of other potential witnesses.

CrRLJ 2.1(c). Based on the evidence presented, the district court makes a probable cause determination. *Id.* The rule also includes a list of seven factors the court may

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Citizen Complaint by Thomas Stout v. Geene Felix*
No. 98613-4

consider in addition to probable cause, as well as a sample affidavit of complaining witness form. *Id.* After the court finds probable cause and weighs the factors, then "the judge may authorize the citizen to sign and file a complaint in the form prescribed in CrRLJ 2.1(a)." *Id.*

Unlike the peace officer exception, the citizen complaint rule does not expressly state whether a citizen's affidavit is an exception to the complaint requirement; but the plain meaning of the citizen complaint rule and the context of the entire rule CrRLJ 2.1 support the conclusion that it is not. *McEnroe*, 174 Wn.2d at 800; *Stump*, 185 Wn.2d at 460. The form and function of an affidavit is different from a complaint or citation and notice. In contrast with the requirements for a complaint or citation and notice, a citizen's affidavit is not required to take any particular form or contain any specific information. *Compare* CrRLJ 2.1(a)(2), (3) (using the word "shall"), *and* CrRLJ 2.1(b)(1), (3), (4) (using the word "shall"), *with* CrRLJ 2.1(c) ("[t]he affidavit *may* be in substantially the [same] form [as the sample]" (emphasis added)). The citizen's affidavit is not required to comply with the sample affidavit contained in the rule, nor is the affidavit required to include the potential defendant's information or the specific alleged offense. CrRLJ 2.1(c).

Also, a citizen's affidavit cannot initiate criminal proceedings because it does not provide any notice to the potential defendant, who has a due process right to notice of the accusations against them. *State v. Siers*, 174 Wn.2d 269, 277, 274 P.3d

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

358 (2012); U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, §§ 3, 22. "These rules shall not be construed to affect or derogate from the constitutional rights of any defendant." CrRLJ 1.1. When criminal proceedings are initiated by complaint or citation and notice, the documents must cite the specific crime and the defendant must receive proper notice. Yet, when a citizen files an affidavit, the citizen complaint rule does not require that the affidavit include the alleged crime, and it contains no notice requirement prior to the filing of the criminal complaint. CrRLJ 2.1(c) ("The court *may* also grant an opportunity at said hearing for evidence to be given by . . . the potential defendant." (emphasis added)).

Further, under the plain language of the citizen complaint rule, the affidavit is not required at all—the citizen may file an affidavit, but the court is not required to consider it. *Id.* ("The judge *may* consider any allegations on the basis of an affidavit sworn to before the judge." (emphasis added)). The only requirement of the citizen is to appear before the judge. *Id.* ("Any person wishing to institute a criminal action . . . *shall appear before a judge*." (emphasis added)). A citizen's affidavit is optional. It can take any form and does not notify the potential defendant about the filing of any proceedings against them. Thus, the affidavit is part of a citizen's request to file a complaint, and it does not initiate criminal proceedings.

Under the citizen complaint rule, criminal proceedings are initiated by the filing of a complaint "in the form prescribed in CrRLJ 2.1(a)." *Id.* The rule delineates

*In re Citizen Complaint by Thomas Stout v. Geene Felix*
No. 98613-4

the process that enables a citizen to request permission from the court to file a criminal complaint. The only requirement is that the citizen appear before a judge. Only after the judge considers all the preliminary evidence provided, finds probable cause, and weighs the delineated factors may the court authorize the citizen to sign and file a criminal complaint and initiate criminal proceedings. *Id.* Then, the complaint that the citizen signs must conform to the complaint requirements in CrRLJ 2.1(a). *Id.* It is incumbent on any citizen who seeks to file such a complaint to ensure that they come before a judge to move their case forward before any statute of limitations passes. If, as in this case, the complaining citizen fails to timely act to prosecute their matter and the statute of limitations passes, the citizen complaint fails.

The crime of false swearing is a gross misdemeanor, and a criminal prosecution must be initiated within two years of the alleged crime. RCW 9A.72.040(2); RCW 9A.04.080(1)(j). No criminal complaint was filed within two years of the alleged crime. Therefore, the district court correctly dismissed Stout's citizen complaint as untimely. We do not reach the constitutional issue.

III. CONCLUSION

Under CrRLJ 2.1, criminal proceedings are initiated by the filing of a criminal complaint. The citizen complaint rule is not an exception to the complaint requirement, and a citizen's affidavit does not initiate criminal proceedings. An

*In re Citizen Complaint by Thomas Stout v. Geene Felix*
No. 98613-4

affidavit is evidence that the citizen may present to the court as part of their request

for permission to sign and file a criminal complaint, but it is not required. Therefore,

we affirm the district court's dismissal of Stout's citizen complaint as untimely.

_____
Montoya-Lewis, J.

WE CONCUR:


_____      _____
González, C.J.                          Stephens, J.


_____      _____
Johnson, J.


_____      _____
Madsen, J.


_____      _____
Owens, J.                               Whitener, J.

*In re Citizen Complaint by Stout v. Felix,* No. 98613-4 (Yu, J., concurring in result)

No. 98613-4

YU, J. (concurring in result) — The district court reached the right result by dismissing this case without any consideration of the merits. And the majority correctly affirms the dismissal. Nevertheless, I cannot join the majority because it assumes that Thomas Stout's private prosecution of Geene Felix could have proceeded without violating the separation of powers doctrine if only it were timely filed. The majority never questions this assumption, citing our general practice of declining to reach constitutional issues. Majority at 4-5 (quoting *State v. Hall*, 95 Wn.2d 536, 539, 627 P.2d 101 (1981)). This form of constitutional avoidance is the best and wisest course of action in the vast majority of cases.[1] But in this case, to avoid the constitutional question is to avoid the heart of the matter.

---

[1] As a general term, "constitutional avoidance" may refer to any of a "series of rules" that courts use to "avoid[ ] passing upon a large part of all the constitutional questions" that are presented by the parties. *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 346, 56 S. Ct. 466, 80 L. Ed. 688 (1936) (Brandeis, J., concurring). The specific rule the majority applies in this case is sometimes called "procedural" constitutional avoidance, in which courts remove constitutional issues from their agenda by considering nonconstitutional issues first. Adrian Vermeule, *Saving Constructions*, 85 GEO. L.J. 1945, 1948-49 (1997); *see Ashwander*, 297 U.S. at 347 (Brandeis, J., concurring). If a nonconstitutional issue is dispositive of the case, then the court can end its analysis there, thus avoiding any consideration of constitutional issues. *See* majority at 9.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No elected prosecuting attorney has ever charged Felix with any crime relating to Stout's allegations.  No grand jury has charged her, either.  *No one has*.  Stout failed to timely file his would-be "charges," and every court to consider his arguments for disregarding the statute of limitations (and Felix's constitutional rights) has correctly rejected them.  Yet Felix has been forced to defend herself against Stout's attempted "prosecution" in three different courts for nearly three years.  This bizarre circumstance was brought about by the "citizen complaint rule," an easily abused, judge-made rule that does nothing to advance justice.  CrRLJ 2.1(c).

The citizen complaint rule is not merely bad policy.  It also derogates our constitutional vision of separation of powers among three branches of government.  Within this constitutional framework, a judicial officer cannot determine in the first instance whether criminal charges should be filed against an individual without usurping the authority of the executive branch.  But that is precisely what the plain language of the citizen complaint rule requires judges to do.  Therefore, on its face, the citizen complaint rule violates the separations of powers doctrine, "'one of the cardinal and fundamental principles of the American constitutional system'" that "forms the basis of our state government." *State v. Rice*, 174 Wn.2d 884, 900, 279 P.3d 849 (2012) (quoting *Wash. State Motorcycle Dealers Ass'n v. State*, 111 Wn.2d 667, 674, 763 P.2d 442 (1988)).  In failing to acknowledge this

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

constitutional violation, the majority signals its view that a citizen complaint is an appropriate means of seeking public redress through criminal prosecution for a private grievance. I do not share this view.

The citizen complaint rule regularly subjects targeted individuals to putative criminal actions based on fatally flawed citizen affidavits that are legally barred, factually baseless, or both. Before these actions are inevitably dismissed, the would-be defendants, third parties, and the general public are forced to incur substantial, and in some cases irreparable, harm. This is an unjustifiable price to pay for a facially unconstitutional, judge-made rule.

I would hold that reaching the constitutional question in this case is necessary and that the answer to that question is clear. The citizen complaint rule is unconstitutional on its face. Therefore, the only appropriate outcome in this and every citizen complaint case is summary dismissal with prejudice. I thus respectfully concur only in the result.

## ANALYSIS

A.  The citizen complaint rule is an unconstitutional judicial usurpation of executive authority

In every criminal case, "[e]ach branch of government plays a distinct role." *Id.* at 889. The Washington Constitution provides that the executive branch is represented by the prosecuting attorney, "a locally elected executive officer who has inherent authority to decide which available charges to file, if any, against a

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

criminal defendant." *Id.* at 900; *see* WASH. CONST. art. XI, § 5. Thus, "[t]he charging discretion of prosecuting attorneys is an integral part of the constitutional checks and balances that make up our criminal justice system." *Rice*, 174 Wn.2d at 889-90. Yet on its face, the citizen complaint rule permits an entire criminal case to proceed from investigation to charging to conviction and sentencing with no participation whatsoever from any member of the executive branch. CrRLJ 2.1(c). The separation of powers violation seems so obvious as to be beyond debate.

However, criminal prosecutions initiated by private citizens undoubtedly have a long history in this state and throughout the country. *E.g.*, *State ex rel. Romano v. Yakey*, 43 Wash. 15, 85 P. 990 (1906). *See generally* John D. Bessler, *The Public Interest and the Unconstitutionality of Private Prosecutors*, 47 ARK. L. REV. 511, 515-20 (1994). Amicus relies heavily on this history to contend that the citizen complaint rule cannot possibly be unconstitutional because it "has been Washington law (in various forms) from the early days of its statehood and even before." Corr. Amicus Curiae Br. of Adam P. Karp at 1. "Various forms" is the key phrase.

In its historical, statutory form, the citizen complaint rule was intended to serve as a check on executive power by reserving some portion of charging authority to be exercised directly by the people. Regardless of the efficacy,

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

wisdom, or constitutionality of that historical system (all of which are questionable), the modern, judge-made citizen complaint rule does not operate that way. Instead of reserving charging authority to be exercised by the *people*, CrRLJ 2.1(c) transfers charging authority from the executive to the *judiciary*. The people reserve nothing.

As long recognized by the district court judges who must apply the citizen complaint rule, this arrangement "violates the separation of powers doctrine, requiring a judge to serve as both prosecutor and judicial officer." Letter from Judge David A. Steiner, President, Dist. & Mun. Court Judges' Ass'n, to Justice Charles W. Johnson, Chair, Supreme Court Rules Comm. (Apr. 16, 2015), https://www.courts.wa.gov/court_Rules/proposed/2014Nov/CrRLJ2.1/Judge%20David%20A.%20Steiner.pdf. The Washington State Bar Association agrees. *Id.* It is time we did the same.

1.      The judge-made citizen complaint rule does not allow the people to check executive power because it reserves no authority to the people

The citizen complaint rule is often presented as an important component of Washington's populist history. As Stout puts it, "[w]hen a prosecutor chooses to overlook particular crimes by particular people, CrRLJ 2.1(c) is one means by which a citizen is allowed to bring the matter to court," reflecting a "concern for the place of the citizen in a constitutional republic that is designed to protect ['][the security of individual right and the perpetuity of free government.[']]" Reply Br. of

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Thomas Stout at 13, 16 (quoting WASH. CONST. art. I, § 32). This is a myth. The citizen complaint rule provides, at most, the illusion of populism.

In its historical, statutory form, the citizen complaint rule appears to have provided a significantly narrower role for the judicial officer, which was limited to the legal determination of probable cause:

> The duty of every magistrate to whom complaint is made is plain and specific:
>
> "He shall examine on oath the complainant, and any witness provided by him, and shall reduce the complaint to writing, and shall cause the same to be subscribed by the complainant; and *if it shall appear that any offense has been committed of which the superior court has exclusive jurisdiction, the magistrate shall issue a warrant* reciting the substance of the accusation," etc.

*Romano*, 43 Wash. at 19-20 (emphasis added) (quoting BAL. CODE § 6695). Thus, if the court found a warrant *could* issue as a matter of law, it did not matter whether the court thought the warrant *should* issue as a matter of justice; that decision was left to the complainant. "This [was] especially true where it is made to appear that the prosecuting attorney is resisting the application." *Id.* at 19.

By contrast, the modern, judge-made citizen complaint rule provides the complaining citizen only the right to "appear before a judge empowered to commit persons charged with offenses against the State." CrRLJ 2.1(c). As the majority correctly notes, the complainant's appearance, or any affidavit they may submit, "does not initiate criminal proceedings." Majority at 9. If probable cause is found,

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

it is the judge, not the complainant, who decides whether criminal charges should be filed based on seven discretionary, nonexclusive factors:

> (1) Whether an unsuccessful prosecution will subject the State to costs or damage claims under RCW 9A.16.110, or other civil proceedings;

> (2) Whether the complainant has adequate recourse under laws governing small claims suits, anti-harassment petitions or other civil actions;

> (3) Whether a criminal investigation is pending;

> (4) Whether other criminal charges could be disrupted by allowing the citizen complaint to be filed;

> (5) The availability of witnesses at trial;

> (6) The criminal record of the complainant, potential defendant and potential witnesses, and whether any have been convicted of crimes of dishonesty as defined by ER 609; and

> (7) Prosecution standards under RCW 9.94A.440.

CrRLJ 2.1(c); *see In re Petition of Ware*, 5 Wn. App. 2d 658, 677-78, 420 P.3d 1083 (2018).

Washington's populist history is still reflected in grand jury proceedings, which (unlike citizen complaints) are specifically contemplated by our state constitution. WASH. CONST. art. I, § 26. But it is not reflected in the modern, judge-made citizen complaint rule, which merely shifts charging authority from one representative branch (the executive) to another (the judiciary).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

2.      Judicial officers cannot make the initial decision as to whether charges should be filed

Given the above understanding, it should be clear that the citizen complaint rule blatantly violates the separation of powers doctrine by requiring a judicial officer to exercise the charging authority that is supposed to be vested in the executive branch.  This throws off the careful balance that the coordinate branches of government are supposed to provide in every criminal case:

> Each branch of government plays a distinct role: the legislature checks prosecutors and the judiciary by defining the particular acts and circumstances that may warrant criminal punishment and the maximum sentences that may be imposed; *prosecutors check the power of the legislature and the judiciary by deciding whom to charge and which available charges and special allegations to file in any given case*; and the judiciary checks the legislature and prosecutors by reviewing probable cause, ensuring a fair trial, and determining the appropriate sentence if the defendant is found guilty. Additionally, the jury checks all three branches of government by deciding in any given case whether the defendant has been proved guilty beyond a reasonable doubt. *Within this balanced constitutional framework, each branch must act in order for criminal punishment to be imposed*, and each exercise of governmental authority may be tempered by mercy. *Accordingly, the legislature cannot usurp the inherent charging discretion of prosecuting attorneys*.

*Rice*, 174 Wn.2d at 889-90 (emphasis added).  This court should not assume to itself the power to usurp executive authority after explicitly prohibiting the legislature from doing so.

Moreover, unlike the statute at issue in *Rice*, the judge-made citizen complaint rule cannot be interpreted in a manner that renders it constitutional.  *See*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*id.* at 899-907. A judge faced with a citizen's affidavit has broad discretion in the factors they consider and the ultimate decision they make, but the one thing they must do in every case is decide whether to "authorize the citizen to sign and file a complaint." CrRLJ 2.1(c). That is not a judicial function; it is the exercise of "broad charging discretion," which "is part of the inherent authority granted to *prosecuting attorneys as executive officers* under the Washington State Constitution." *Rice*, 174 Wn.2d at 904 (emphasis added).

In practice, it appears that most district court judges faced with citizen complaints generally agree with the elected prosecutor's decision as to whether charges should be filed. *E.g.*, *Romano*, 43 Wash. at 17-18; *Ware*, 5 Wn. App. 2d at 668. Thus, the unconstitutionality of requiring the judge to make that decision is still present, but it has no practical effect on the disposition of the case. This results in limited appellate precedent on the citizen complaint rule and provides an excellent demonstration of how the rule in operation does nothing to advance its supposed populist purpose. But if the judge were to disagree with the prosecutor, it would prompt precisely the type of interbranch conflicts that the separation of powers is supposed to mitigate.

What happens if the judge decides that charges should be filed but the elected prosecutor, "tempered by mercy," refuses to proceed with the case? *Rice*, 174 Wn.2d at 890. Stout admitted, "That is a very good question." Wash.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Supreme Court oral argument, *Stout v. Felix*, No. 98613-4 (Mar. 9, 2021), at 3

min., 37 sec., *video recording by* TVW, Washington State's Public Affairs

Network, http://www.tvw.org. He suggested that in such a circumstance, the

private citizen should "have the opportunity to pursue a prosecution on his own

and hire an attorney to do so." *Id.* at 4 min., 16 sec.; *see also* Reply Br. of Thomas

Stout at 25; Corr. Amicus Curiae Br. of Adam P. Karp at 14. That is impossible.

Any licensed attorney retained by Stout would be ethically prohibited from

acting as a prosecutor due to the obvious conflict of interest that arises where an

alleged crime victim pays the legal fees of the prosecuting attorney—the attorney

is funded by someone who is personally invested in a conviction, but "[t]he

prosecutor's duty is to seek justice, not merely convictions." *State v. Walker*, 182

Wn.2d 463, 476, 341 P.3d 976 (2015). And any nonattorney would, of course, also

be prohibited from acting as a prosecutor because the "[u]nlawful practice of law is

a crime." RCW 2.48.180(3)(a).

Moreover, the judge could not order the elected prosecutor to pursue

criminal charges because that would be an "improper and destructive exercise[ ]"

that directly "undermine[s] the operation of another branch." *In re Salary of*

*Juvenile Dir.*, 87 Wn.2d 232, 243, 552 P.2d 163 (1976). But the judge also could

not appoint an outside attorney to prosecute an ordinary criminal case "over the

objection of an able and willing prosecuting attorney." *State ex rel. Banks v.*

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Drummond*, 187 Wn.2d 157, 161, 385 P.3d 769 (2016);[2] *Ladenburg v. Campbell*, 56 Wn. App. 701, 703-04, 784 P.2d 1306 (1990) (holding that district courts do not have inherent authority to appoint special prosecutors). *But see Young v. United States ex rel. Vuitton et Fils SA*, 481 U.S. 787, 795, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987) (holding that in the specific context of a contempt action, outside counsel may be appointed because "the initiation of contempt proceedings to punish disobedience to court orders is a part of the judicial function"). Thus, the citizen complaint rule purports to allow judges to authorize prosecutions without prosecutors. That is absurd.

Conversely, if the judge rules that charges should *not* be filed despite the presence of probable cause, but the elected prosecutor believes they should be filed (before the statute of limitations has run out), what happens then? "[T]he inherent charging discretion of prosecuting attorneys" suggests that the prosecutor must be permitted to file criminal charges, notwithstanding the judge's contrary ruling based on the same allegations. *Rice*, 174 Wn.2d at 890. But that "allows the State multiple bites at the apple," which is extremely cruel to the accused person and a

---

[2] "Willing" does not mean "[ ]willing to do as requested by Stout." *Contra* Corr. Amicus Curiae Br. of Adam P. Karp at 9. It refers to a prosecutor's "willingness to perform [their] duties as prosecuting attorney," one of which is to exercise independent discretion in the initial charging decision. *Drummond*, 187 Wn.2d at 167; *Rice*, 174 Wn.2d at 899-907. Stout, like the rest of the public, may exercise control over the elected prosecutor by voting, but he does not have any special authority to demand that the prosecutor make particular charging decisions.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

possible violation of the constitutional prohibition against double jeopardy. *State v. Womac*, 160 Wn.2d 643, 651, 160 P.3d 40 (2007); *see* U.S. CONST. amend. V; WASH. CONST. art. I, § 9.[3]

It is thus clear that the only cases in which the citizen complaint rule has any effect on the filing of criminal charges is when it presents a direct, interbranch conflict with no constitutionally permissible resolution. Therefore, CrRLJ 2.1(c) is unconstitutional on its face.

B.      We should reach the constitutional question presented

If it were true, as the majority asserts, that the citizen complaint rule is "rarely" used, then the benefits of avoiding the constitutional issue might outweigh the costs. Majority at 5. However, while appellate precedent based on citizen complaints is very rare, the record does not show (and I do not believe) that district court filings based on citizen complaints are so rare that we may disregard their harmful effects. To the contrary, there are strong indications that citizen complaints are far more common, and cause far more damage, than published appellate precedent suggests.

---

[3] It is difficult to know how a court would protect the accused person from being "twice put in jeopardy for the same offense" in a citizen complaint case because courts articulating double jeopardy principles generally appear to assume that the judge did *not* unconstitutionally assume a prosecutorial role by making the initial charging decision. WASH. CONST. art. I, § 9; *see, e.g.*, *Serfass v. United States*, 420 U.S. 377, 388, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975) (discussing "'attachment of jeopardy'" principles); *State v. Karpov*, 195 Wn.2d 288, 293, 458 P.3d 1182 (2020) (discussing "judicial acquittals").

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We could prevent further damage by holding that the citizen complaint rule is facially unconstitutional. Unfortunately, not only does the majority decline to reach the issue in this case, but it makes doing so virtually impossible in any future case. Given this particular context, the harms of avoiding the constitutional issue far outweigh the benefits.

1. The principle of constitutional avoidance does not prevent us from reaching the separation of powers issue

There should be no question that we could affirm the district court's order of dismissal based on the separation of powers doctrine if we chose to do so. The issue is properly before us because Felix raised it at the district court and confirmed at oral argument that she had not abandoned it. Wash. Supreme Court oral argument, *supra*, at 19 min., 49 sec. The parties and amicus have provided extensive briefing on the issue. And we have broad authority "[i]n the determination of causes" to reach our decisions "on the basis of issues set forth by the parties in their briefs." WASH. CONST. art. IV, § 2; RAP 12.1(a); *see also LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989) ("[A]n appellate court can sustain the trial court's judgment upon any theory established by the pleadings and supported by the proof, even if the trial court did not consider it.").

Yet the majority says nothing about the separation of powers doctrine, explaining its decision as a form of constitutional avoidance: "We will not reach a constitutional issue 'unless absolutely necessary to the determination of the case.'"

13

*In re Citizen Complaint by Stout v. Felix,* No. 98613-4 (Yu, J., concurring in result)

Majority at 4-5 (quoting *Hall*, 95 Wn.2d at 539). Constitutional avoidance is the wisest course of action in the overwhelming majority of cases. *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 345-46, 56 S. Ct. 466, 80 L. Ed. 688 (1936) (Brandeis, J., concurring).[4] It is motivated by judicial "'conscious[ness] of the fallibility of the human judgment'" and every court's respect for "the 'great gravity and delicacy' of its function in passing upon the validity of an act of [the legislature]." *Id.* at 345 (quoting 1 THOMAS M. COOLEY, A TREATISE ON CONSTITUTIONAL LIMITATIONS 332 (8th ed. 1927); *Adkins v. Children's Hosp.*, 261 U.S. 525, 544, 43 S. Ct. 394, 67 L. Ed. 785 (1923)).

However, it is not always appropriate to avoid constitutional issues because "the inexorable result is 'constitutional stagnation'—fewer courts establishing law at all, much less clearly doing so." *Zadeh v. Robinson*, 928 F.3d 457, 479 (5th Cir. 2019) (Willett, J., concurring in part, dissenting in part) (emphasis and footnote omitted) (quoting Aaron L. Nielson & Christopher J. Walker, *The New Qualified Immunity*, 89 S. CAL. L. REV. 1, 12 (2015)), *cert. denied*, 141 S. Ct. 110 (2020). Recognizing this, the United States Supreme Court has sometimes "permitted lower courts to avoid avoidance—that is, to determine whether a [constitutional]

---

[4] This court's discussions of constitutional avoidance have previously relied on general legal encyclopedias that are not specific to Washington law. *E.g.*, *Ohnstad v. City of Tacoma*, 64 Wn.2d 904, 907, 395 P.2d 97 (1964) (citing 16 C.J.S. *Constitutional Law* § 94 (1956); 11 AM. JUR. *Constitutional Law* § 93 (1937)); *Jellum v. Normanna Lodge No. 3*, 31 Wn.2d 846, 850, 199 P.2d 108 (1948) (citing 11 AM. JUR. *Constitutional Law* § 93 (1937)). I therefore cite federal sources as persuasive but not controlling authority on this issue.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

right exists before examining whether it was clearly established" in the context of a

qualified immunity analysis. *Camreta v. Greene*, 563 U.S. 692, 706, 131 S. Ct.

2020, 179 L. Ed. 2d 1118 (2011). Nothing prevents this court from giving itself

the same permission.

We should not rigidly avoid constitutional issues in those rare cases where

the harms of constitutional avoidance far outweigh its benefits. This is one such

case. Here, constitutional avoidance would do little to serve its underlying

purposes because the citizen complaint rule is a product of this court, not the

legislature. We are the sole body with authority to consider the constitutionality of

our own, judge-made court rules. We therefore have less justification for avoiding

the task. More importantly, however, declining to address the facial

unconstitutionality of the citizen complaint rule in this case will cause uniquely

negative consequences that no other entity can prevent.

> 2.  Constitutional avoidance in this case is far more harmful than beneficial because it insulates the citizen complaint rule from constitutional scrutiny

Ordinary principles of constitutional avoidance indicate that no opinion of

this court (or the Court of Appeals) will consider the possibility that the citizen

complaint rule violates the separation of powers doctrine on its face unless

15

*In re Citizen Complaint by Stout v. Felix,* No. 98613-4 (Yu, J., concurring in result)

(1) someone is timely charged on the basis of a citizen complaint,[5] (2) the charge

results in a conviction,[6] (3) the convicted person has the resources and the fortitude

to pursue at least two levels of appellate review over a misdemeanor conviction,[7]

(4) there is no nonconstitutional basis on which to reverse,[8] and (5) there is no

narrower constitutional basis on which to reverse.[9]

Such a scenario is unlikely to arise in any context, but that is intentional

because "[f]acial claims are generally disfavored." *Woods v. Seattle's Union

Gospel Mission,* 197 Wn.2d 231, 240, 481 P.3d 1060 (2021). However, in the

context of the citizen complaint rule, the ordinary rules of constitutional avoidance

do not make a decision on the merits of a facial constitutional challenge merely

unlikely—they make it effectively impossible.

At the outset, there is almost no chance that a citizen complaint affidavit will

lead to timely filed charges or a conviction. As the District and Municipal Court

---

[5] I agree with the majority that "a citizen's affidavit does not initiate criminal proceedings." Majority at 9.

[6] If a citizen complaint case ends in dismissal or acquittal and the complainant appeals (as happened here), then the appeal can always be dismissed because the complainant is not an "aggrieved party" and has no standing to appeal. RALJ 2.1(a); RAP 3.1; *see also State ex rel. Simeon v. Superior Court*, 20 Wn.2d 88, 90, 145 P.2d 1017 (1944) ("The mere fact that one may be . . . disappointed over a certain result . . . does not entitle [them] to appeal.").

[7] The first appeal from a district court is to superior court, so at least two levels of review are needed to reach this court or the Court of Appeals. RALJ 1.1, 2.3(a).

[8] In general, "[w]e will not reach a constitutional issue 'unless absolutely necessary to the determination of the case.'" Majority at 4-5 (quoting *Hall*, 95 Wn.2d at 539).

[9] In general, we will not "'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Woods v. Seattle's Union Gospel Mission*, 197 Wn.2d 231, 240, 481 P.3d 1060 (2021) (internal quotation marks omitted) (quoting *State v. McCuistion*, 174 Wn.2d 369, 389, 275 P.3d 1092 (2012)).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Judges' Association (DMCJA) has repeatedly pointed out, "[c]itizen complaints are often poorly drafted and factually questionable." 4B ELIZABETH A. TURNER, WASHINGTON PRACTICE: RULES PRACTICE CrRLJ 2.1 drafters' cmt. at 530 (8th ed. 2020). Therefore, "few survive a probable cause evaluation," much less the many steps required to secure a conviction. *Id.*, task force cmt. at 528. However, even if a citizen complaint does lead to a purported conviction, there will always be a basis for reversal other than the facial unconstitutionality of the citizen complaint rule.

In most situations, there will be numerous bases for reversal that are specific to the case. For instance, based solely on what has already been filed in the (still ongoing) *precharging* stage of this case, it is clear that any conviction based on Stout's affidavit would be easily reversible either (1) on the statutory basis of failure to charge within the statute of limitations or, if Stout's affidavit is treated as the charging document, (2) on the constitutional basis that the affidavit "does not provide any notice to the potential defendant, who has a due process right to notice of the accusations against them." Majority at 7 (citing *State v. Siers*, 174 Wn.2d 269, 277, 274 P.3d 358 (2012); U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, §§ 3, 22).

However, in the implausible event of a conviction that is otherwise free of reversible error, a reviewing court can *always* reverse on the narrower basis that the citizen complaint rule is unconstitutional as applied, rather than facially. *Ware*,

17

*In re Citizen Complaint by Stout v. Felix,* No. 98613-4 (Yu, J., concurring in result)

5 Wn. App. 2d at 670 (superior court affirmed dismissal of citizen complaint affidavit in part because failure to dismiss would violate separation of powers as applied). Thus, by declining to address the facial constitutional issue in this case, the majority in fact immunizes the citizen complaint rule from facial constitutional challenges in all future cases.

This is anomalous. If a statute is facially unconstitutional, it may be repealed through the legislative process, but the constitutional issue may also be raised by a party and decided by this court. *E.g.*, *State v. Gresham*, 173 Wn.2d 405, 432, 269 P.3d 207 (2012) ("RCW 10.58.090 is an unconstitutional violation of the separation of powers doctrine because it irreconcilably conflicts with ER 404(b)."). The same is true for court rules; the rule making process is one avenue to address constitutional violations, but litigation is another. *E.g.*, *In re Det. of D.F.F.*, 172 Wn.2d 37, 42, 256 P.3d 357 (2011) (plurality opinion) ("MPR 1.3 violates article I, section 10."). I see no good reason why the citizen complaint rule should be uniquely invulnerable to facial constitutional challenges.

     3.     Constitutional avoidance in this case is far more harmful than beneficial because the harms caused by citizen complaint cases are substantial

To the extent the majority believes that citizen complaints are so rare that the harms they cause are insignificant, I disagree. *See* majority at 5. While there is sparse *appellate precedent* available, that does not capture the full picture of

18

*In re Citizen Complaint by Stout v. Felix,* No. 98613-4 (Yu, J., concurring in result)

*attempted* citizen complaints and the substantial harm they cause. For the procedural and substantive reasons discussed above, such cases rarely advance beyond the district court level. Therefore, district courts, rather than appellate precedent, are the best source of information about the frequency and impact of citizen complaint filings.

The DMCJA has consistently and repeatedly supported the repeal of the citizen complaint rule through the rule making process for more than 30 years. Letter from Judge Steiner, *supra*. The Washington State Bar Association supports its repeal as well. *Id.* "The primary concern of the DMCJA is that CrRLJ 2.1(c) violates the separation of powers doctrine." *Id.* They have also raised concerns that "[c]itizen complaints are often filed out of improper motives[,] such as retaliation for charges filed against the citizen complainant" and "to harass law enforcement or public officials." 4B TURNER, *supra*, drafters' cmt. at 530.

As the ones who must implement the citizen complaint rule, district court judges are the most familiar with its operation, and their unwavering view is that citizen complaints are harmful and unconstitutional. It is thus a mistake to treat the minimal number of appellate opinions analyzing citizen complaints as a proxy for the number of attempted citizen complaints filed in the district courts, and a far greater mistake to disregard the harms caused by these unsuccessful attempts.

19

*In re Citizen Complaint by Stout v. Felix,* No. 98613-4 (Yu, J., concurring in result)

Every attempted citizen complaint entails certain burdens common to all such cases. The financial burdens alone may be significant, as scarce public resources must be expended on the "appearance" that the complainant "shall" make before a judge. CrRLJ 2.1(c). The elected prosecutor and law enforcement may also be required to expend resources on a "hearing," additional witnesses may be permitted or "require[d]" to attend, and the rule gives the "potential defendant" the right to an "attorney of record."[10] *Id.* Baseless criminal accusations further subject the accused "'to embarrassment, expense and ordeal and compel[ them] to live in a continuing state of anxiety and insecurity, as well as enhanc[e] the possibility that even though innocent[, they] may be found guilty.'" *Womac*, 160 Wn.2d at 651 (quoting *Green v. United States*, 355 U.S. 184, 187-88, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957)).

In addition, on a more fundamental level, all citizen complaints elevate the will of a single individual above the will of all other members of the public. "[T]he very concept of a locally elected 'prosecuting attorney' includes the core function of exercising broad charging discretion on behalf of the local community." *Rice*, 174 Wn.2d at 905. Thus, Washington voters choose who has the authority to bring criminal charges in their counties and throughout the state by

---

[10] In this case, the public is paying for Felix's attorney (the Office of the Attorney General) because Stout's allegations were based on Felix's actions in the performance of her official duties as a state employee. Clerk's Papers at 108; *see* RCW 43.10.030(3).

20

*In re Citizen Complaint by Stout v. Felix,* No. 98613-4 (Yu, J., concurring in result)

electing local prosecutors and an attorney general. *Id.* at 900; WASH. CONST. art. III, § 1, art. XI, § 5; RCW 43.10.030(4). By attempting to sidestep these officials' authority, every citizen complaint undermines "the right of the county's voters to choose their elected official." *Drummond*, 187 Wn.2d at 183 (holding that a county board of commissioners may not "unilaterally contract with outside counsel over the objection of an able and willing prosecuting attorney").

In addition to the damage caused by all such cases, every attempted private prosecution causes harms unique to the case. Just one example from this case is Stout's mistitling his appeal to superior court as "State v. Felix" to make it appear as though this were an actual criminal case, instead of the unsuccessful citizen complaint case that it is. Clerk's Papers (CP) at 1, 7-8, 22-24. This was an intentional act of dishonesty rather than a simple mistake; Stout did the same thing in district court, and the judge explicitly admonished him that the case title "is and it should be[,] on our documents [and] also on our computer system[,] In Regards to the Citizen's Complaint, Petitioner Thomas Stout." *Id.* at 142-43.

The superior court found that Stout's dishonesty over something so petty as the case title caused Felix "difficulties performing her job functions as she is having difficulty accessing secure facilities to work with clients who are incarcerated." *Id.* at 28. Felix is an investigator with the Child Protective Services division of the Department of Children, Youth, and Families, and she sometimes

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

needs to access secure facilities to timely complete her investigations. *Id.* at 22. Therefore, her difficulties in accessing those facilities to do her job harmed not only Felix, but Washington families and children in need of services, as well as the general public. *See id.* at 29 ("The Court has considered the interests of the public in this matter and the Department of Children, Youth, and Families.").

On Felix's motion, the superior court properly changed the case title to reflect that this is not a criminal case. *Id.* at 28-29. But in child welfare investigations, where time is always essential, the harm caused by the delays in Felix's investigations can never be fully known, much less undone. And Felix herself will suffer detrimental impacts well into the future (potentially for the rest of her life) because, although it was wrongfully filed in bad faith, Stout's mistitled appeal is now a court record that is presumptively open to the public. *Hundtofte v. Encarnación*, 181 Wn.2d 1, 6, 330 P.3d 168 (2014) (plurality opinion).

Felix has already explained that having this apparent criminal case on her record could cause difficulties if she "were to need a background check for employment" because "the way this is filed would cause a potential employer to believe that [she has] a pending criminal charge." CP at 24. However, to get the record redacted or sealed, Felix must bring another motion in which she will bear the burden of proving that she will suffer future "hardships" that "outweigh[ ] the public's interest in the open administration of justice." *Encarnación*, 181 Wn.2d at

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

9. She is unlikely to succeed; even a family's "very important" interest in finding secure, appropriate housing may be deemed "[p]ure speculation" if a court determines that "it is not impossible for them to obtain housing" of some kind. *Id.* at 10.

An elected prosecutor would be legally and professionally accountable for such detrimental impacts. It is inherent in the nature of "prosecuting attorneys" that they are attorneys and are therefore subject to professional discipline if they deviate from the Rules of Professional Conduct. WASH. CONST. art. XI, § 5. Prosecutors have additional, special responsibilities because a "'public prosecutor . . . is a quasi-judicial officer, representing the People of the state, and presumed to act impartially in the interest only of justice.'" *State v. Monday*, 171 Wn.2d 667, 676 n.2, 257 P.3d 551 (2011) (emphasis omitted) (alteration in original) (quoting *People v. Fielding*, 158 N.Y. 542, 547, 53 N.E. 497 (1899)); *see also* RPC 3.8 cmt. 1 ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate."). It is also inherent in the nature of any office filled by "election," including that of a prosecuting attorney, that the official is always subject to being voted out of office for any actions or omissions deemed relevant by the public. WASH. CONST. art. XI, § 5. Thus, elected prosecutors are constrained by ethical rules and the will of the voters, and they can be held accountable for their transgressions.

23

*In re Citizen Complaint by Stout v. Felix,* No. 98613-4 (Yu, J., concurring in result)

Stout is neither an attorney nor an elected official, so he will not be held accountable to any standards beyond his own. It is therefore unsurprising that Stout was apparently pleased by the negative impacts of his dishonesty, suggesting that the "inconvenience" Felix suffered was appropriate retaliation for the "humiliation" he felt as the alleged victim of Felix's alleged crime. CP at 14-15; *cf. id.* at 27 (antiharassment protection order prohibiting Stout from coming within 500 feet of Felix's job or home for 10 years based on his "threat to [a] State employee due to her duties").

Stout's misuse of the judicial process and lack of concern for the public interest typifies the challenges that arise when private, interested individuals attempt to play the "distinctive role of the prosecutor" because of the ever-present "*potential* for private interest to influence the discharge of public duty." *Young*, 481 U.S. at 803, 805; *see, e.g.*, *Ware*, 5 Wn. App. 2d at 667 (attempting to charge a juvenile who "was under 12 years old at the time of the incident" in adult court). These problems are compounded when the private individual is not trained to discern between ethical and unethical conduct for an attorney in the highly specialized setting of a criminal prosecution, where another person's liberty may be put at risk based on a complainant's misunderstanding of (or disregard for) fundamental legal concepts. *Cf. State v. Yishmael*, 195 Wn.2d 155, 170, 456 P.3d 1172 (2020) ("Victims of unlicensed practice of law have faced deportation; had

*In re Citizen Complaint by Stout v. Felix,* No. 98613-4 (Yu, J., concurring in result)

money misappropriated; and, as this case demonstrated, have been arrested and jailed.").

The citizen complaint rule encourages conduct similar to Stout's, despite the extensive harm it causes to everyone else. We should therefore address the facial unconstitutionality of this judge-made rule now, so that we may prevent similar harm in the future.

CONCLUSION

It is long past time for the wasteful pretense of citizen complaints to end. I would affirm the district court's order of dismissal on the alternative basis that this and every citizen complaint case must be summarily dismissed with prejudice because CrRLJ 2.1(c) is unconstitutional on its face. I therefore respectfully concur only in the result.

_____
Yu, J.

_____
Gordon McCloud, J.

25